## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

BENDER AYED HAMOUD HEZAM     )
AL-OTEIBI AL-SHABANY,     )
     Detainee,     )
     Guantánamo Bay Naval Station,     )
     Guantánamo Bay, Cuba; and     )
     )
AYED HAMOUD HEZAM AL-OTEIBI     )
AL-SHABANY,     )
     as Next Friend of Bender Ayed     )
     Hamoud Hezam Al-Oteibi Al-Shabany,     )
     )
*Petitioners/Plaintiffs*,     )
     )
     )     **PETITION FOR WRIT**
     )     **OF HABEAS CORPUS**
v.     )
     )
     )     No. _____
     )
GEORGE W. BUSH,     )
     President of the United States     )
     The White House     )
     1600 Pennsylvania Ave., N.W.     )
     Washington, D.C. 20500;     )
     )
DONALD RUMSFELD,     )
     Secretary, United States     )
     Department of Defense     )
     1000 Defense Pentagon     )
     Washington, D.C. 20301-1000;     )
     )
ARMY BRIG. GEN. JAY HOOD,     )
     Commander, Joint Task Force – GTMO     )
     JTF-GTMO     )
     APO AE 09360; and     )
     )
ARMY COL. MIKE BUMGARNER,     )
     Commander, Joint Detention     )
       Operations Group – JTF-GTMO     )
     JTF-GTMO     )
     APO AE 09360,     )
     )
*Respondents/Defendants.*     )

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Al-Shabany") seeks the Great Writ. A citizen of Saudi Arabia, he acts on his own behalf and through his Next Friend, Ayed Hamoud Hezam Al-Oteibi Al-Shabany, his father. He is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel, and without being afforded any fair process by which he might challenge his detention. Al-Shabany is being held by color and authority of the Executive, and in violation of the Constitution, laws, and treaties of the United States, as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Al-Shabany or to establish in this Court a lawful basis for Al-Shabany's detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, and/or under the Executive Order of November 13, 2001, *Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism*, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("Executive Order"), Respondents George W. Bush, President of the United States; Donald H. Rumsfeld, U.S. Secretary of Defense; Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO; and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of Al-Shabany at Guantánamo.

# I.

## JURISDICTION

1.    Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242.

Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651,

2201, and 2202; 5 U.S.C. § 702; and Articles I and II of, and the Fifth and Sixth

Amendments to, the United States Constitution.  Because they seek declaratory relief,

Petitioners also rely on Rule 57 of the Federal Rules of Civil Procedure.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus,

and to entertain the Petition filed by Ayed Hamoud Hezam Al-Oteibi Al-Shabany, the

Next Friend of Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany, under 28

U.S.C. § 2242.  This Court is further empowered to declare the rights and other legal

relations of the parties herein by 28 U.S.C. § 2201; to effectuate and enforce declaratory

relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an

actual controversy within the Court's jurisdiction; and to issue all writs necessary or

appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

# II.

## PARTIES

3.    Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany is a Saudi Arabian citizen

who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody

and control.  *See* Authorization of Ayed Hamoud Hezam Al-Oteibi Al-Shabany, dated

June 27, 2005, attached hereto as Exhibit 1.

4.    Petitioner Ayed Hamoud Hezam Al-Oteibi Al-Shabany is Al-Shabany's father.  *Id.*  He is

a citizen of Saudi Arabia.  Because his son has been denied access to legal counsel and to

the courts of the United States, Ayed Hamoud Hezam Al-Oteibi Al-Shabany acts as his Next Friend. *Id.*

5.  Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Al-Shabany is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or, alternatively, pursuant to the Executive Order of November 13, 2001. President Bush is responsible for Al-Shabany's unlawful detention and is sued in his official capacity.

6.  Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war, or, alternatively, pursuant to the Executive Order of November 13, 2001, Secretary Rumsfeld has been charged with the responsibility of maintaining the custody and control of Al-Shabany. He is sued in his official capacity.

7.  Respondent Brigadier General Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo. He has supervisory responsibility for Al-Shabany and is sued in his official capacity.

8.  Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Al-Shabany is presently held. He is the immediate custodian responsible for Al-Shabany's detention and is sued in his official capacity.

9.  Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities

- 4 -

performed by Respondents' agents or employees, other Government agents, or employees or contractor employees.

## III.

## STATEMENT OF FACTS

10.    Upon information and belief, Al-Shabany was detained in Pakistan and, at some point thereafter, was transferred to the United States Naval Station at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

11.    Upon information and belief, Al-Shabany remains incarcerated at Guantánamo.

12.    Upon information and belief, at the time of his seizure and detention, Al-Shabany was not a member of the Taliban government's armed forces or Al Qaeda. He has not engaged in combat or acts of terrorism against the United States. He did not cause or attempt to cause any harm to American personnel or property prior to his detention.

13.    Upon information and belief, Al-Shabany is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the Government in any civil or military proceeding.

14.    Upon information and belief, Al-Shabany is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 2639 (2004) (internal quotation marks omitted).

15.    Upon information and belief, Al-Shabany is not, nor has he ever been, an "enemy combatant" under the overly broad definition set forth in the order issued on July 7, 2004 by Deputy Secretary of Defense Paul Wolfowitz: "an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities

against the United States or its coalition partners [ ... , including] any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

16.    Al-Shabany seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that he is an "enemy combatant" as defined by the U.S. Supreme Court in *Hamdi*.

17.    Al-Shabany has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process; the Constitution, the laws, and treaties of the United States; or customary international law.

18.    Al-Shabany desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### The Joint Resolution

19.    In the wake of the September 11, 2001 attacks, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Sept. 18, 2001) ("Joint Resolution").

20.    As, upon information and belief, Al-Shabany did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

21.     Upon information and belief, Al-Shabany is not, and has never been, a member of Al

Qaeda or any other terrorist group.  Prior to his detention, he did not commit any violent

act against any American person or espouse any violent act against any American person

or property.  He had no involvement, direct or indirect, in the September 11, 2001

terrorist attacks, or any act of international terrorism attributed by the United States to Al

Qaeda or any other terrorist group.  He is not properly subject to the detention order

issued by President Bush.  As he did not participate in the armed conflict at any point in

time, he is not properly subject to President Bush's authority as Commander-in-Chief or

under the laws and usages of war.

### The Executive Order

22.     On November 13, 2001, Respondent President Bush issued an Executive Order

authorizing Respondent Secretary Rumsfeld to detain indefinitely anyone President Bush

has "reason to believe":

    i.      is or was a member of the organization known as al Qaida;

    ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

    iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii) ....

Executive Order, 66 Fed. Reg. 57,833, § 2(a)(1).  Pursuant to the Executive Order,

President Bush must make this determination in writing.  *Id*. § 2(a).  This Executive

Order was neither authorized nor directed by Congress, and is beyond the scope of the

Joint Resolution of September 18, 2001.

23.     The Executive Order purports to vest President Bush with the sole discretion to identify

individuals who fall within its purview.  It establishes no standards governing the

- 7 -

exercise of the President's discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the basis for his detention or any charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. *Id.* § 7(b)(2). In short, the Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

24. The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Al-Shabany was made by Respondents in the United States and in this judicial district, the decision to detain Al-Shabany at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Al-Shabany was, and is being, made by Respondents in the United States and in this judicial district.

25. Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Al-Shabany is subject to the Executive Order.

26. Al-Shabany is not properly subject to the Executive Order.

27. Al-Shabany has not been, and is not being, detained lawfully pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, or the laws and usages of war.

Al-Shabany was not arrested or detained by the United States in the course of an armed conflict.

### Guantánamo Bay Naval Station

28.  On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.

29.  In addition to prisoners captured in Afghanistan, United States authorities have transferred to Guantánamo individuals taken into custody in numerous other countries, including Pakistan, Gambia, Bosnia, Zimbabwe, and Thailand.

30.  Currently, prisoners at Guantánamo are housed in Camp Delta and Camp 5, an additional maximum-security interrogation and detention center.

31.  In or around 2002, the precise date being unknown to counsel but known to Respondents, the United States military transferred Al-Shabany from Pakistan and/or from another country to Guantánamo, where he has been held ever since, at all times in the custody and control of Respondents.

32.  Al-Shabany, as a detainee at Guantánamo, is entitled to test the legality of his detention in the federal courts.  *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 2698 (2004).

### The Conditions of Detention at Guantánamo

33.  Since gaining control of Al-Shabany, the United States military has held him virtually *incommunicado*.

34.  Upon information and belief, Al-Shabany has been or will be forced to provide involuntary statements to Respondents' agents, employees, and or contract employees at Guantánamo and has been or will be interrogated repeatedly by agents of the United

States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges. He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Third and Fourth Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees, or customary international law. Indeed, Respondents have taken the position that Al-Shabany should not be informed of these rights. As a result, Al-Shabany lacks any ability to protect or to vindicate his rights under domestic and international law.

35.    Upon information and belief, Al-Shabany has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman, and degrading treatment or punishment. *See, e.g.*, Press Release, United Nations, *United Nations Human Rights Experts Express Continued Concern About Situation of Guantanamo Bay Detainees* (Feb. 4, 2005); *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'* (Amnesty International), Oct. 27, 2004, *available at* http://web.amnesty.org/library/index/ ENGAMR511452004; *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Champion (Nat'l Ass'n of Criminal Defense Lawyers), Nov. 2004, at 4-5. Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were interrogation techniques initially approved for use at Guantánamo by Respondent

Secretary Rumsfeld and the most senior Department of Defense lawyer. *See* Action
Memo from William J. Haynes II, General Counsel, Department of Defense, to Secretary
of Defense (Nov. 27, 2002, approved Dec. 2, 2002) (rescinded in part by Memorandum
from Secretary of Defense (Jan. 15, 2003)); *see also Pentagon Working Group Report on
Detainee Interrogations in the Global War on Terrorism: Assessment of Legal,
Historical, Policy, and Operational Considerations* (Apr. 4, 2003).[1]

36.    In confidential reports to the United States Government, the International Committee of
the Red Cross ("ICRC") charged the U.S. military with intentional use during
interrogations of psychological and physical coercion on prisoners at Guantánamo that is
"tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in
Guantanamo*, N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors
and other medical workers at Guantánamo participated in planning for interrogations.
*Id.*; *see also* M. Gregg Bloche & Jonathan H. Marks, *When Doctors Go to War*, 352 New
Eng. J. Med. 3, 3-4 (2005). Since details of the ICRC's report emerged, new revelations
of abuse and torture at Guantánamo have appeared, including FBI memos detailing
torture and "highly aggressive interrogation techniques" including 24-plus hour
interrogations involving temperature extremes, dogs, prolonged isolation, and loud
music. *See Guantánamo: An Icon of Lawlessness* (Amnesty International), Jan. 6, 2005,
at 3-5; *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo*,
N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further Detainee Abuse Alleged;*

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at
Guantánamo are set out at length in a statement by numerous released British detainees. *See*
Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and
Guantanamo Bay, at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatement
FINAL23july04.pdf. The Department of Defense also informed the Associated Press that a
number of interrogators at Guantánamo have been demoted or reprimanded after investigations
into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Associated
Press, Nov. 4, 2004.

*Guantanamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26, 2004, at A1; Neil A. Lewis & David Johnston, *New F.B.I. Files Describe Abuse of Iraq Inmates*, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen & R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantanamo Bay*, Wash. Post, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantanamo*, N.Y. Times, Dec. 7, 2004, at A19. The Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to torment and humiliate Muslim detainees. *Gitmo Soldier Details Sexual Tactics*, Associated Press, Jan. 27, 2005.

37.    The unlawful and unconstitutional interrogation techniques approved and/or used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See Lawyers Describe Guantanamo Detainees*, Associated Press, Jan. 19, 2005.

38.    Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, *Gonzales Says Humane-Policy Order Doesn't Bind C.I.A.*, N.Y. Times, Jan. 19, 2005, at A17.

39.    In published statements, Respondents President Bush, Secretary Rumsfeld, and the predecessors of Respondents Hood and Bumgarner (respectively, Michael Lenhert and Terry Carrico) have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.*, Roland Watson, *British Team to Question Cuba*

*Detainees*, Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the US Defence Secretary, suggested last night that al-Qaeda prisoners could be held indefinitely at the [Guantánamo] base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); John Mintz, *Extended Detention in Cuba Mulled*, Wash. Post, Feb.13, 2002, at A16 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

40.  According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Background Briefing on Military Commissions, U.S. Department of Defense, July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

41.  Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold detainees under their current conditions indefinitely. *See, e.g., In re Guantanamo Detainee Cases*, Nos. 02-CV-0299 (CKK) *et al.* (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24 (statements of Principal Deputy Associate Attorney General Brian Boyle); *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1. Moreover, earlier this year, the Government acknowledged plans to begin constructing a new, more permanent facility at Guantánamo. Christopher Cooper, *Detention Plan: In Guantanamo, Prisoners Languish in Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1; *Guantanamo Takes on Look of Permanency*, Associated Press, Jan. 9, 2005.

**Combatant Status Review Tribunals**

42.    On July 7, 2004, nine days after the Supreme Court issued its decisions in *Rasul v. Bush* and *Hamdi v. Rumsfeld*, Deputy Secretary of Defense Paul Wolfowitz issued an order (the "CSRT Order") which defined the term "enemy combatant" and established Combatant Status Review Tribunals ("CSRT"s) to review the "enemy combatant" status of each detainee at Guantánamo.

43.    The definition of "enemy combatant" contained in the CSRT Order is significantly broader than that considered in *Hamdi v. Rumsfeld*.

44.    By the terms of the CSRT Order, detainees are denied access to legal counsel, and they are not permitted to view any classified information upon which their detention is based.

45.    On March 29, 2005, the Secretary of the Navy announced that CSRTs for all detainees at Guantánamo had been completed, and that the "enemy combatant" status of 520 of 558 total detainees had been confirmed.  *See* Transcript of Special Briefing by Secretary Gordon England on Combatant Status Review Tribunals (Mar. 29, 2005).

46.    On information and belief, on a date unknown to counsel but known to Respondents, a CSRT reviewed Al-Shabany's status as an "enemy combatant."  The outcome of that review is unknown to counsel but known to Respondents.

**Rendition**

47.    During interrogations, detainees at Guantánamo have also been threatened with transfer to countries that routinely practice torture.  Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to

torture.  *See* Jane Mayer, *Outsourcing Torture: The Secret History of America's "Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005.

48.     The U.S. Government's practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, *The Washington Post*, *The New York Times*, and the British Broadcasting Corporation.  According to news accounts:

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources.  The suspects have been taken to countries ... whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

Rajiv Chandrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries ... that agree to have local security services hold certain terror suspects in their facilities for interrogation by CIA and foreign liaison officers.").

49.     Al-Shabany is a citizen of Saudi Arabia, a country with a long history of torture and prisoner abuse, as acknowledged by the United States.  *See, e.g.*, *Country Reports on Human Rights Practices for 2004: Saudi Arabia* (U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor), *available at* http://www.state.gov/g/drl/rls/hrrpt/2004/41731.htm.  Upon information and belief, Saudi Arabia is among the countries to which the United States has in the past secretly transferred detainees.  *See* Douglas Jehl &

David Johnston, *Rule Change Lets C.I.A. Freely Send Suspects Abroad*, N.Y. Times, Mar. 6, 2005, at A1.

50.   According to the Declaration of Matthew C. Waxman, Deputy Assistant of Defense for Detainee Affairs, submitted in *Al-Marri v. Bush*, No. Civ. A. 04-2035 (GK), 2005 WL 774843 (D.D.C. Apr. 4, 2005), of the 211 detainees who have been transferred from Guantánamo, 65 have been transferred for the express purpose of continued detention. *Id.* at *2. Of those 65 detainees, 29 were transferred to Pakistan, 5 to Morocco, and 4 to Saudi Arabia – all "countries that our own State Department has acknowledged torture prisoners." *Id.* at *4.

51.   Recently it was reported that the U.S. Government seeks shortly to transfer almost 70 percent of the remaining Guantánamo detainees to prisons in their home countries, including Saudi Arabia. *See* Tim Reid, *Guantanamo Inmates Face Transfer to Jail at Home*, Times (London), Aug. 6, 2005.

52.   Consequently, there is an imminent and acute risk that Al-Shabany may be rendered, expelled, or returned without lawful procedures to Saudi Arabia, or another country that the United States acknowledges engages in torture during interrogations and incarceration.

### IV.

### CAUSES OF ACTION

FIRST CLAIM FOR RELIEF
(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE
OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION –
UNLAWFUL DEPRIVATION OF LIBERTY)

53.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

54.   By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the Due Process

Clause of the Fifth Amendment to the U.S. Constitution. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the other Respondents have implemented those orders. Respondents' actions deny Al-Shabany the process due to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

55.  To the extent that Al-Shabany's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Al-Shabany.

56.  To the extent that Al-Shabany's status has been reviewed by a CSRT, the procedures implemented in connection with such a proceeding failed to satisfy Fifth Amendment and common law due process requirements, in that they denied him access to legal counsel and to material evidence upon which his "enemy combatant" status was based. The CSRT proceeding was also constitutionally deficient to the extent the CSRT relied on statements that were obtained through torture, or that were otherwise provided involuntarily. Additionally, the definition of "enemy combatant" used in connection with the CSRT proceeding was overly broad.

57.  Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION –
UNLAWFUL CONDITIONS OF CONFINEMENT)

58.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

59.    By the actions described above, Respondents, acting under color of law, have violated
and continue to violate the right of Al-Shabany to be free from unlawful conditions of
confinement, in violation of the Due Process Clause of the Fifth Amendment to the U.S.
Constitution.

60.    Accordingly, Al-Shabany is entitled to declaratory and injunctive relief, as well as any
other relief the Court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS – ARBITRARY DENIAL OF DUE PROCESS)

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    By the actions described above, Respondents, acting under color of law, have denied and
continue to deny Al-Shabany the process due to persons seized and detained by the
United States military in times of armed conflict as established by specific provisions of
the Third and Fourth Geneva Conventions.

63.    Violations of the Geneva Conventions are direct treaty violations, are violations of
customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241
(c)(3).

64.    Respondents are liable for this conduct described above, insofar as they set the conditions
and directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or
conspired to violate the Geneva Conventions.

65.    Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well
as any other relief the Court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW –
ARBITRARY DENIAL OF DUE PROCESS)

66.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

67.    By the actions described above, Respondents have denied and continue to deny Al-
Shabany the process due to persons seized and detained by the United States military in
times of armed conflict as established by customary international humanitarian and
human rights law as reflected, expressed, and defined in multilateral treaties and other
international instruments and domestic judicial decisions, and other authorities.

68.    Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well
as any other relief the Court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – TORTURE)

69.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70.    By the actions described above, Respondents directed, ordered, confirmed, ratified,
and/or conspired to bring about acts that deliberately and intentionally inflicted severe
physical and psychological abuse and agony upon Al-Shabany in order to obtain coerced
information or confessions from him, to punish or intimidate him, or for other purposes.

71.    The acts described herein constitute torture in violation of the law of nations under the
Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law
prohibiting torture as reflected, expressed, and defined in multilateral treaties and other
international instruments, international, and domestic judicial decisions, and other
authorities.

72.    Respondents are liable for said conduct because they directed, ordered, confirmed,
ratified, and/or conspired together and with others to commit the acts of torture against
Al-Shabany.

73.  Upon information and belief, Al-Shabany has been, and is being, forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – WAR CRIMES )

74.  Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

75.  By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Al-Shabany constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions, and Additional Protocols I and II of the Geneva Conventions, as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decisions, and other authorities.

76.  As a result of Respondents' unlawful conduct, upon information and belief, Al-Shabany has been, and is being, forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE –
CRUEL, INHUMAN, OR DEGRADING TREATMENT)

77.  Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

78.  Upon information and belief, the acts described herein have had the intent and the effect of grossly humiliating and debasing Al-Shabany, forcing him to act against his will and conscience, inciting fear and anguish, and/or breaking his physical or moral resistance.

79. The acts described herein constitute cruel, inhuman, or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman, or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

80. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman, or degrading treatment of Al-Shabany.

81. Upon information and belief, Al-Shabany has been, and is being, forced to suffer severe physical and psychological abuse and agony, and is entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

EIGHTH CLAIM FOR RELIEF<br>(ALIEN TORT STATUTE –<br>ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

82. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83. The acts described herein constitute arbitrary arrest and detention of Al-Shabany in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

84. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Al-Shabany in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and

defined in multilateral treaties and other international instruments, international and
domestic judicial decisions, and other authorities.

85.    As a result of Respondents' unlawful conduct, upon information and belief, Al-Shabany
has been, and is being, deprived of his freedom, separated from his family, and forced to
suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory,
and injunctive relief, as well as any other relief the Court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE – ENFORCED DISAPPEARANCE)

86.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

87.    By the actions described above, Respondents directed, ordered, confirmed, ratified,
and/or conspired to bring about the enforced disappearance of Al-Shabany in violation of
the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated
customary international law prohibiting enforced disappearances as reflected, expressed,
and defined in multilateral treaties and other international instruments, international and
domestic judicial decisions, and other authorities.

88.    As a result of Respondents' unlawful conduct, upon information and belief, Al-Shabany
has been, and is being, deprived of his freedom, separated from his family, and forced to
suffer severe physical and mental abuse, and is therefore entitled to declaratory and
injunctive relief, as well as any other relief the Court may deem appropriate.

### TENTH CLAIM FOR RELIEF
### (ARTICLE II OF THE U.S. CONSTITUTION – UNLAWFUL DETENTION)

89.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

90.    Al-Shabany is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent,
or combatant of any kind.  The Executive lacks the authority to order or direct military
officials to detain civilians who are seized far from the theater of war or occupied

territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi*, 124 S. Ct. at 2642 n.1.

91. By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the U.S. Constitution by authorizing, ordering, and directing that military officials seize Al-Shabany and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Al-Shabany.

92. The military seizure and detention of Al-Shabany by Respondents is *ultra vires* and illegal because it violates Article II of the U.S. Constitution. To the extent that the Executive asserts that Al-Shabany's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void, both on its face and as applied to Al-Shabany.

93. To the extent that Respondents assert that their authority to detain Al-Shabany derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the U.S. Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

94. Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA – ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

95.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8, ¶ 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

97.    By arbitrarily and capriciously detaining Al-Shabany in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

98.    Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA – ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

99.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

100.   By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Al-Shabany the process due to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

101.   Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN,
OR DEGRADING TREATMENT)

102.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

103.   By the actions described above, Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Al-Shabany to torture and/or cruel, inhuman, or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

104.   Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHTS TO COUNSEL AND TO DUE PROCESS)

105.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

106.   Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Al-Shabany's right to consult with counsel by conditioning counsel's access to him on unreasonable terms, including classification/declassification procedures, all in violation of Al-Shabany's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

107.   Accordingly, Al-Shabany is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE – RENDITION)

108.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

109.    Upon information and belief, Al-Shabany is at risk of being rendered, expelled, or returned without lawful procedures to Saudi Arabia or another country that the United States acknowledges engages in torture.  The transfer of Al-Shabany to such a country creates a foreseeable and direct risk that he will be subjected to torture, and thus constitutes a violation of his rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

110.    Accordingly, Al-Shabany is entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF
### (CONVENTION AGAINST TORTURE AND CONVENTION RELATING TO THE STATUS OF REFUGEES – RENDITION)

111.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

112.    Upon information and belief, Al-Shabany is at risk of being rendered, expelled, or returned without lawful procedures to Saudi Arabia or another country that the United States acknowledges engages in torture.  The transfer of Al-Shabany to such a country creates a foreseeable and direct risk that he will be subjected to torture, and thus constitutes a direct violation of his rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150, *entered into force* Apr. 22, 1954.

113.    Accordingly, Al-Shabany is entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF
## (ALIEN TORT STATUTE – RENDITION)

114.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

115.   Upon information and belief, Al-Shabany is at risk of being rendered, expelled, or
returned without lawful procedures to Saudi Arabia or another country that the United
States acknowledges engages in torture.  The transfer of Al-Shabany to such a country
creates a foreseeable and direct risk that he will be subjected to torture, and thus
constitutes a violation of his rights under customary international law, which may be
vindicated under the Alien Tort Statute.

116.   Accordingly, Al-Shabany is entitled to declaratory and injunctive relief, as well as any
other relief the Court may deem appropriate.

### V.

### PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.   Designate Petitioner Ayed Hamoud Hezam Al-Oteibi Al-Shabany as Next Friend of
Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany;

2.   Grant the Writ of Habeas Corpus and order Respondents to release Al-Shabany from his
current unlawful detention;

3.   Order that Al-Shabany be brought before the Court or before a Magistrate Judge assigned
by the Court to conduct proceedings under the supervision of the Court to vindicate his
rights;

4.   Order that Al-Shabany cannot be transferred to any other country without the specific
written agreement of Al-Shabany and his counsel while this action is pending;

5.   Order that Al-Shabany cannot be delivered, returned, or rendered to a country where
there is a foreseeable and imminent risk that he will be subject to torture;

6.      Order Respondents to allow counsel to meet and confer with Al-Shabany, in private and
        unmonitored attorney-client conversations;

7.      Order Respondents to cease all interrogations of Al-Shabany, direct or indirect, while this
        litigation is pending;

8.      Order Respondents to cease all acts of torture and cruel, inhuman, and degrading
        treatment of Al-Shabany;

9.      Order and declare that the Executive Order of November 13, 2001 is *ultra vires* and
        unlawful in violation of Article II of the U.S. Constitution, the Fifth Amendment to the
        U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures
        Act, the treaties of the United States, and customary international law;

10.     Order and declare that the prolonged, indefinite, and restrictive detention of Al-Shabany
        without due process is arbitrary and unlawful and a deprivation of liberty without due
        process in violation of common law principles of due process, the Due Process Clause of
        the Fifth Amendment to the U.S. Constitution, the regulations of the United States
        military, the treaties of the United States, and customary international humanitarian law;
        and

11.     Grant such other relief as the Court may deem necessary and appropriate to protect Al-
        Shabany's rights under the common law, the U.S. Constitution, federal statutory law, and
        international law.

Dated:  October 14, 2005

Respectfully submitted,

Counsel for Petitioners:

RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No. BF-0114)
Christopher W. Dysard (SDNY No. CD-0002)
Marcellene E. Hearn (SDNY No. MH-6050)
One World Financial Center, 29th Floor
New York, New York  10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC No. 358597)
1775 Eye Street NW
Washington, D.C.  20006
Tel: (202) 261-2960
Fax: (202) 261-2999

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Tina Monshipour Foster (SDNY No. TF-5556)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to Rule 83.2(g) of the Local Civil Rules, that

they are representing Petitioners without compensation.

Dated:  October 14, 2005

RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No. BF-0114 )
Christopher W. Dysard (SDNY No. CD-0002)
Marcellene E. Hearn (SDNY No. MH-6050)
One World Financial Center, 29th Floor
New York, New York  10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC No. 358597)
1775 Eye Street NW
Washington, D.C.  20006
Tel: (202) 261-2960
Fax: (202) 261-2999

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the following persons at the addresses listed below as follows: via Hand Delivery to U.S. Attorney Wainstein; via Certified Mail, Return Receipt Requested to President Bush, Attorney General Gonzales, and Secretary Rumsfeld; and via First Class Mail to Army Brig. Gen. Hood and Army Col. Bumgarner.

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530

**Alberto R. Gonzales**
ATTORNEY GENERAL OF THE UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Donald Rumsfeld**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Army Brig. Gen. J. Hood**
COMMANDER, JOINT TASK FORCE-GTMO
JTF-GTMO
APO AE 09360

**Army Col. Bumgarner**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

On this the 14th day of October, 2005.

Paul Leder