## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENDER AYED HAMOUD HEZAM<br>AL-OTEIBI AL-SHABANY and<br>AYED HAMOUD HEZAM AL-OTEIBI<br>AL-SHABANY, as Next Friend,<br><br>        Petitioners/Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH, DONALD RUMSFELD,<br>ARMY BRIG. GEN. JAY HOOD, and<br>ARMY COL. MIKE BUMGARNER,<br><br>        Respondents/Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. _____** |

## MOTION FOR AN ORDER REQUIRING RESPONDENTS TO PROVIDE AT LEAST 30 DAYS' ADVANCE NOTICE TO THE COURT AND TO COUNSEL FOR PETITIONERS PRIOR TO THE TRANSFER OF PETITIONER FROM THE UNITED STATES NAVAL STATION AT GUANTÁNAMO BAY, CUBA

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioners respectfully move for an order requiring Respondents to provide at least thirty (30) days' advance notice to the Court and to counsel for Petitioners prior to transferring Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Petitioner Al-Shabany") from the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). On information and belief, Petitioner Al-Shabany is at imminent risk of being transferred from Guantánamo to his home country Saudi Arabia, or to another country, where he will be subjected to indefinite detention, further interrogation and torture. Indeed, on information and belief, Respondents are currently in the process of negotiating an agreement to transfer all of the Saudi detainees currently held at Guantánamo for continued detention in Saudi Arabia, a country with a documented history of torturing prisoners. Petitioners request such advance notice to prevent

any interference with the jurisdiction of the Court in this matter and to enable counsel to contest any such transfer.

Pursuant to Local Rule 7(m), Counsel for Petitioners conferred via telephone on October 12, 2005 with counsel for Respondents who will oppose the motion.

### STATEMENT OF FACTS

Petitioner Al-Shabany is a citizen of Saudi Arabia who is being detained as an "enemy combatant" at Guantánamo. A Petition for a Writ of Habeas Corpus has been filed separately on this date on behalf of Petitioner Al-Shabany and through his Next Friend, Ayed Hamoud Hezam Al-Oteibi Al-Shabany, his father. In that petition, Petitioner Al-Shabany denies being an "enemy combatant" and contends he is being detained in violation of the United States Constitution; the laws of the United States, including the Alien Tort Statute and the Administrative Procedures Act; Articles 3 and 5 of the Third and Fourth Geneva Conventions as well as other treaties; and customary international law.[1]

Petitioner Al-Shabany has ample reason to fear that he is in imminent danger of being transferred from Guantánamo to Saudi Arabia or to another country where he will be tortured, interrogated and/or detained indefinitely without due process of law.

The United States has already transferred some detainees from Guantánamo into the custody of governments with a well-documented record of torturing prisoners, including Saudi Arabia. According to the Declaration of Matthew C. Waxman, Deputy Assistant of Defense for Detainee Affairs, which was submitted in *Al-Marri v. Bush*, of the 211 detainees who have been

---

[1] See Alien Tort Statute, 28 U.S.C. § 1350; Administrative Procedures Act, 5 U.S.C. § 706(2); Geneva Convention Relative to the Treatment of Prisoners of War, August 12, 1949, art. 3 & 5, 6 U.S.T. 3316; Geneva Convention Relative to the Protection of Civilian Persons in Time of War, August 12, 1949, art. 3 & 5, 6 U.S.T. 3516.

transferred from Guantánamo, 65 have been transferred into the custody of a foreign government for the express purpose of continued detention. *See Al-Marri v. Bush*, No. Civ. A. 04-2035 (GK), 2005 WL 774843, at *2 (D.D.C. Apr. 4, 2005) (citing the Decl. of Matthew C. Waxman). Of those 65 detainees, 29 were transferred to Pakistan, 5 to Morocco and 4 to Saudi Arabia – "countries that our own State Department has acknowledged torture prisoners." *Id.* at *4.

Moreover, recent news reports indicate that the United States plans imminently to transfer detainees from Guantánamo into the custody of the governments of Afghanistan, Yemen and Saudi Arabia. In August 2005, the U.S. Department of State reached an agreement with the Government of Afghanistan to transfer Afghan detainees into its custody. *See* U.S. Dep't of State, Press Release, Aug. 4, 2005, http://www.state.gov/r/pa/prs/ps/2005/50748.html. According to the *Times* (U.K.), similar agreements are being pursued with the governments of Saudi Arabia and Yemen. *See* Tim Reid, *Guantanamo Inmates Face Transfers to Jails at Home,* Times (U.K.), Aug. 6, 2005, at 48; *see also* Dana Priest, *Long-Term Plan Sought For Terror Suspects,* Wash. Post, Jan. 2, 2005, at A1 (reporting plans to transfer Saudi, Afghan and Yemeni detainees to US-built prisons in their home countries).

In addition, upon information and belief, since September 11, 2001, the United States has dramatically expanded its use of a practice known as "rendition," whereby detainees and others suspected of participation in terrorist activities are secretly removed from the custody of the United States to that of another country without complying with the legal requirements for extradition or any other legal process.

According to reports by news organizations, including *The Washington Post* and the *Los Angeles Times*, the United States Government has repeatedly transferred detainees into the custody of foreign governments that are known to use torture to interrogate prisoners. For

example, an article earlier this year in *The New Yorker* explained how the "rendition" process, formerly "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," was expanded in the wake of the September 11, 2001 attacks to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants'" – many of whom have not been charged with any crimes. Jane Mayer, *Annals of Justice: Outsourcing Torture*, The New Yorker, Feb. 14, 2005, *at* ¶ 7, http://www.newyorker.com/fact/content/?050214fa_fact6. An article in *The Washington Post* further detailed that:

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1; *see also* Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over for Torture,* L.A. Times, Jan. 13, 2005, at A1 ("News accounts, congressional testimony and independent investigations suggest that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners."); Dana Priest & Barton Gellman, *U.S. Decries Abuse but Defends Interrogations,* Wash. Post, Dec. 26, 2002, at A1.

Finally, at least one Guantánamo detainee, Mamdouh Habib, was rendered by the United States to Egypt, where he was allegedly tortured, before being transferred to Guantánamo. Mr. Habib's allegations of torture are described by Judge Green in the *Guantánamo Detainee Cases*, and in news accounts.

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod." And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . . Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.

Mayer, *Outsourcing Torture*, at ¶ 54; *see also In re Guantánamo Detainee Cases*, 355 F. Supp. 2d 443, 473 (D.D.C. 2005) (detailing similar allegations). Indeed, the Combatant Status Review Tribunal at Guantánamo "found [these] allegations of torture serious enough to refer the matter" to the Criminal Investigation Task Force. *In re Guantánamo Detainee Cases*, 355 F. Supp. 2d at 473. The credibility of Mr. Habib's account is bolstered by United States Department of State reports which have consistently identified the Egyptian government as a practitioner of torture. In a report concerning Egypt released on February 28, 2005, for example, the State Department found that "there were numerous, credible reports that security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards remained common and persistent." U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, *Country Reports On Human Rights Practices 2004: Egypt*, Feb. 28, 2005, § 1(c), http://www.state.gov/g/drl/rls/hrrpt/2004/41720.html.

## ARGUMENT

Petitioners seek to enjoin Respondents from secretly transferring Petitioner Al-Shabany from Guantánamo to another location without notice while the pending *habeas* action is before the Court. Thus, the requested order simply requires Respondents to provide at least thirty days' notice to the Court and to counsel for Petitioners before any planned transfer. Petioners seek this relief in order to prevent any interference with the jurisdiction of this Court in the pending

*habeas* action, to afford Petitioners a chance to challenge such a transfer before it occurs, and to preserve Petitioner Al-Shabany's right to challenge his detention.

A.    The Court Has The Power To Enter The Proposed Order.

As set out above, a primary purpose of the proposed order is to prevent any interference with the Court's jurisdiction in the pending *habea*s action.  Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *see also Kurnaz v. Bush*, No. Civ. 04-1135(ESH), 2005 WL 839542, at *2 (D.D.C. Apr. 12, 2005) (citing cases).  Thus, this Court has the power to enter the proposed order.

B.    The Standard For Granting A Preliminary Injunction Has Been Met.

Each of the four factors to be weighed in awarding preliminary injunctive relief strongly favors the requested injunction here: (1) Petitioner Al-Shabany will suffer irreparable harm if the injunction is denied; (2) absolutely no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner Al-Shabany is likely to succeed on the merits of his underlying claims; and (4) there is a clear public interest in preventing the United States Government from transferring an individual to a foreign country where he will be subject to indefinite detention, continued interrogation, and probable torture, without due process of law.  *See Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  Moreover, Petitioners' request meets the most fundamental purpose of preliminary injunctive relief: "to preserve the status quo between the parties pending a final determination of the merits of the action."  13 Moore's Federal Practice 3d, § 65.20 (2004).

1.    <u>Petitioner Al-Shabany Has Demonstrated He Will Suffer Irreparable Harm Absent Entry Of The Proposed Order.</u>

Petitioner Al-Shabany stands to suffer immeasurable and irreparable harm.  As a citizen of Saudi Arabia, Petitioner Al-Shabany has reason to fear that he will be transferred into the custody of the government of Saudi Arabia for continued detention without due process of law, where he may be subjected to interrogation and torture.  As set out above, Saudi Arabia is among the countries to which the United States has already transferred detainees, and as the U.S. Department of State has acknowledged, Saudi Arabia has a documented history of torture and prisoner abuse.  *See, e.g.*, U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, *Country Reports on Human Rights Practices 2004: Saudi Arabia*, § 1(c), Feb. 28, 2005, http://www.state.gov/g/drl/rls/hrrpt/2004/41731.htm.  Petitioner Al-Shabany may also be transferred into the custody of a country other than Saudi Arabia, where a similar fate may await him.  Depending on where Petitioner Al-Shabany is transferred, such transfer may interfere with this Court's jurisdiction and with Petitioner Al-Shabany's ability to challenge such transfer and his continued detention by creating needless delays.  *See e.g., Al-Marri*, 2005 WL 774843, at *4.

2.    <u>Respondents Will Suffer No Conceivable Harm From Entry Of The Order.</u>

In stark contrast, Respondents, who have already held Petitioner Al-Shabany for several years, are asked only to provide the Court and counsel for Petitioners with adequate notice of any intended removal of Petitioner Al-Shabany from Guantánamo.  Respondents will suffer no conceivable harm from complying with such a request.  As Judge Kesslow stated in her decision on a similar motion, "at most, [the entry of the proposed order] would require the Government to file a few pieces of paper."  *Al-Joudi v. Bush*, No. Civ.A. 05-301 (GK), 2005 WL 774847, at *6 (D.D.C. Apr. 4, 2005).

3.    Petitioner Al-Shabany Is Likely To Succeed On The Merits Of His Claims.

Petitioner Al-Shabany is likely to succeed on the merits of his underlying claims.  A party seeking a preliminary injunction need not show "a mathematical probability" of success; rather, it is enough that the issues raised are "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation." *Washington Metro Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (internal citations and quotations omitted).  Petitioner Al-Shabany has certainly met this test.

As an initial matter, Petitioner Al-Shabany has properly invoked the jurisdiction of this Court to hear his petition for the Great Writ.  *See Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 2698 (2004).  Judge Green has already ruled that detainees in similar circumstances to Petitioner Al-Shabany have the right to challenge their detention under the Due Process Clause, and that those who are found to be former Taliban fighters may also challenge their detentions under the Geneva Conventions.  *See In re Guantánamo Detainee Cases*, 355 F. Supp. 2d at 478, 480.  Although Judge Leon reached the opposite conclusion in *Khalid v. Bush*, 355 F. Supp. 2d 311, 323 (2005), both cases have been consolidated for appeal to the United States Court of Appeals.  Thus, there is no doubt that the common issues raised in this case are "fair ground for litigation."

In addition, permitting Respondents to transfer Petitioner Al-Shabany without notice, before the Court of Appeals and, in all likelihood, the United States Supreme Court, have finally determined the full scope of the rights held by those detained at Guantánamo would be tantamount to allowing Respondents to circumvent the judicial process.  Such a transfer would also violate basic international legal norms embodied not only in the Geneva Conventions but also in the Convention Against Torture and Other Cruel, and Inhuman or Degrading Treatment or Punishments, Dec. 4, 1984, 1465 U.N.T.S. 85; and the International Covenant of Civil and Political Rights, March 23, 1976, 999 U.N.T.S. 171.

4.     The Public Interest In Preventing The Violation Of Constitutional Rights Is
       Served Through Entry Of The Proposed Order.

Finally, the public interest is best served if the requested relief is granted.  First, no matter

how satisfied the Executive Branch may be that its proposed actions are lawful, the public good

requires that a federal litigant, properly before this Court, be provided with a meaningful

opportunity to contest a proposed transfer into the hands of another government which may

torture him or detain him indefinitely – *before* the transfer occurs.  Second, entry of the proposed

order will ensure that Petitioner Al-Shabany has an opportunity to contest his detention that

satisfies his due process rights.  "It is always in the public interest to prevent the violation of a

party's constitutional rights."  *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d

1071, 1079 (6th Cir. 1994).  Given that the right at issue here, "the right not to be deprived of

liberty without the due process of law – is one of the most fundamental rights recognized by the

U.S. Constitution," *In re Guantánamo Detainee Cases*, 55 F. Supp. 2d at 464, there is no

question that the public interest falls on the side of entering the requested relief.

## CONCLUSION

For the reasons set forth above, the motion should be granted.

Dated: Washington, DC
       October 14, 2005

                              Respectfully submitted,
                              Counsel for Petitioners:

RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No.: BF-0114)
Marcellene E. Hearn (SDNY No.: MH-6050)
Christopher W. Dysard (SDNY No.: CD-0002)
One World Financial Center, 29th Floor
New York, New York 10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC 358597)
1775 Eye Street NW
Washington, D.C. 20006
Tel: (202) 261-2960
Fax: (202) 261-2999

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Tina Monshipour Foster (SDNY No. TF-5556)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the following persons at the addresses listed below as follows: via Hand Delivery to U.S. Attorney Wainstein; via Certified Mail, Return Receipt Requested to President Bush, Attorney General Gonzales, and Secretary Rumsfeld; and via First Class Mail to Army Brig. Gen. Hood and Army Col. Bumgarner.

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530

**Alberto R. Gonzales**
ATTORNEY GENERAL OF THE UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Donald Rumsfeld**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Army Brig. Gen. J. Hood**
COMMANDER, JOINT TASK FORCE-GTMO
JTF-GTMO
APO AE 09360

**Army Col. Bumgarner**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

On this the 14th day of October, 2005.

Paul Leder