IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
**BENDER AYED HAMOUD HEZAM**              )
**AL-OTEIBI AL-SHABANY** *et al.*,                    )
                                                              )
      Petitioners,                                )
                                                              )
v.                                                          )   Civil Action No. 05-2029 (JDB)
                                                              )
**GEORGE W. BUSH** *et al.*,                            )
                                                              )
      Respondents.                             )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITIONERS' MOTION FOR THE IMMEDIATE
ISSUANCE OF A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2243
OR, ALTERNATIVELY, TO ISSUE AN ORDER TO SHOW CAUSE**

      Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Al-Shabany"), together with his Next Friend as Co-Petitioner, by and through undersigned counsel, rely on the following points and authorities in support of their motion requesting this Court to issue forthwith a writ of habeas corpus, pursuant to 28 U.S.C. § 2243, returnable in three (3) days, in order to proceed to a hearing on the merits of their Petition.  Alternatively, Petitioners seek forthwith the issuance of an order to show cause why a writ of habeas corpus should not be granted, returnable in three (3) days.  In support of their motion, Petitioners state the following:

      1.     Al-Shabany is a detainee at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo").  Upon information and belief, he has been imprisoned by the United States government for approximately three years.  During that entire time, he has been held in United States military custody virtually *incommunicado*.

      2.     On October 14, 2005, undersigned counsel filed a Petition for Writ of Habeas Corpus (the "Petition") on behalf of Petitioners.  The Petition contests Al-Shabany's continued

incarceration, as well as his inhumane treatment, which violates the Constitution and laws of the United States, the Uniform Code of Military Justice, specified treaties to which the United States is a party, and various principles of international law, as set forth more fully in the Petition.

3. Pursuant to 28 U.S.C. § 2243, "[a] court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

4. There is no doubt that Petitioners are entitled to challenge Al-Shabany's incarceration. The United States Supreme Court has so determined. *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 2699 (2004). Further, the government has agreed that "§ 2241 and its companion provisions [including § 2243] provide at least a skeletal outline of the procedure to be afforded a petitioner in federal habeas review." *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 2644 (2004). Accordingly, Petitioners respectfully submit that this Court is required forthwith either to issue the writ or to order the government to show cause why the writ should not be granted.

5. Pursuant to 28 U.S.C. § 2243, the writ or order to show cause "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed."

6. Petitioners request that the writ or, alternatively, the order to show cause be returnable within three (3) days. There is no reason to delay issuance of the writ or an order to show cause. The original Petition was filed on October 14, 2005, twenty days ago. The same day, service was effected through by-hand delivery to the United States Attorney for the District of Columbia District, pursuant to Fed. R. Civ. P. 4(i)(1)(A); through certified mail to Respondents President Bush and Secretary Rumsfeld, as well as Attorney General Gonzales,

pursuant to Fed. R. Civ. P. 4(i)(1)(B); and through first class United States mail to Respondents Army Brig. Gen. Hood and Army Col. Bumgarner, pursuant to a long-standing understanding with the government regarding Guantánamo detainee cases. Additionally, the same day, the undersigned counsel sent an electronic PDF copy of the Petition to Senior Trial Attorney Terry Henry and Trial Attorney Andrew Warden of the Federal Programs Branch of the United States Department of Justice's Civil Division, who are coordinating all of the parallel Guantánamo cases for the Respondents. Thus, Respondents have already had the twenty-day notice period contemplated under 28 U.S.C. § 2243.

7.     Moreover, the government has had more than sufficient time to identify and assemble the facts purportedly supporting the detention of Al-Shabany. Upon information and belief, the government has interrogated Al-Shabany repeatedly during his incarceration at Guantánamo, over a period possibly spanning three or more years.

8.     Additionally, upon information and belief, the government has recently had the opportunity to review the factual bases purportedly supporting the continued detention of Al-Shabany. Earlier this year, the government announced publicly that Combatant Status Review Tribunals ("CSRT"s) had completed their review of the "enemy combatant" status of each detainee at Guantánamo – including, presumably, Al-Shabany. *See* Transcript of Special Briefing by Secretary Gordon England on Combatant Status Review Tribunals (Mar. 29, 2005).

9.     In no way should the CSRT proceeding, if any, forestall review by an Article III court of Al-Shabany's continued detention. For the numerous reasons outlined in the Petition, the circumscribed procedures implemented in connection with such a proceeding fail to satisfy due process requirements.

10.	This matter must be handled expeditiously, given the substantial likelihood that Al-Shabany is being detained without basis.  According to one account earlier this year, the United States military's own "[c]ommanders now estimate that up to 40% of the 549 current detainees [at Guantánamo] probably pose no threat and possess no significant information."  *See* Christopher Cooper, *Detention Plan: In Guantanamo, Prisoners Languish in Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1.  Even more shocking, "[m]ilitary officials at Guantanamo say they have specifically recommended the release of about 100 of those men.  But after a year of delay, the Pentagon, which make the final call, has yet to act."  *Id.*  This is unconscionable.  Upon information and belief, Al-Shabany has spent three or more years without charge, without access to counsel, and without being afforded any fair process by which he might challenge his designation or detention.

11.	Petitioners also challenge the conditions of Al-Shabany's incarceration.  There is a strong likelihood that, over the course of his incarceration in an 8-by-6 foot cell, Al-Shabany has been subjected to cruel and degrading treatment at the express direction of United States officials for the purpose of obtaining information and confessions – a practice that directly contravenes applicable domestic, military, and international law.  *See, e.g., Videos Show Guantanamo Prisoner Abuse*, Associated Press, Feb. 1, 2005 ("Videotapes of riot squads subduing troublesome terror suspects at the U.S. prison camp at Guantanamo Bay show the guards punching some detainees, tying one to a gurney for questioning and forcing a dozen to strip from the waist down, according to a secret report."); Dan Eggen & R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantanamo Bay*, Wash. Post, Dec. 21, 2004, at A1 (FBI agents report that, among other things, Guantánamo detainees "were shackled to the floor in fetal positions for more than 24 hours at a time, left without food and water, ... allowed to defecate on

themselves," intimidated by "growling dogs," and subjected to questioning by "military interrogators impersonat[ing] FBI agents"); Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantanamo*, N.Y. Times, Nov. 30, 2004, at A1 (in confidential reports to the government, Red Cross has confirmed the use at Guantánamo of "psychological and sometimes physical coercion 'tantamount to torture'"); Patrick E. Tyler, *Ex-Guantanamo Detainee Charges Beating*, N.Y. Times, Mar. 12, 2004, at A10 (former Guantánamo detainee reports that "he was brutally beaten by the American military police, and that he and his fellow captives were subjected to mistreatment and humiliation"); Carol D. Leonnig & Dana Priest, *Detainees Accuse Female Interrogators,* Wash. Post, Feb. 10, 2005, at A1 (reporting that female interrogators at Guantánamo, among other things, "pretended to spread menstrual blood on Muslim men").

12. Reports reveal that the conditions at Guantánamo, coupled with the prospect of indefinite detention, pose grave dangers to the physical and mental health of detainees. *See, e.g.,* Physicians for Human Rights, *Break Them Down: Systematic Use of Psychological Torture by US Forces*, at 20 (2005) (reviewing the government's practices at Guantánamo and concluding that such practices have "led to devastating health consequences for the individuals subjected to them"); Josh White, *Guantanamo Desperation Seen in Suicide Attempts*, Wash. Post, Nov. 1, 2005, at A1 (recounting a suicide attempt at Guantánamo witnessed two weeks ago by a lawyer, and noting that this is "one of several signs that lawyers and human rights advocates contend point to growing desperation among the more than 500 detainees there"); *23 Detainees Attempted Suicide in Protest at Base, Military Says*, Associated Press, Jan. 25, 2005 (in 2003 alone, there were 350 "self-harm" incidents among Guantánamo detainees, including 120 "hanging gestures"); Neil A. Lewis, *U.S. Erecting a Solid Prison at Guantanamo for Long Term*, N.Y. Times, Oct. 22, 2003, at A20 (Red Cross has determined that "the uncertainty the

[Guantánamo] detainees faced was a major factor in the high rate of attempted suicides and the incidence of clinical depression").

    WHEREFORE, for the above-stated reasons and for any and all other reasons that may become known to the Court, Petitioners respectfully request that this Court issue either a writ of habeas corpus or an order to show cause to Respondents, either of which should then be ordered returnable within three (3) days of issuance by this Court.

Dated:  November 3, 2005			Respectfully submitted,

Counsel for Petitioners:

/s/  Paul A. Leder
RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No. BF-0114)
Christopher W. Dysard (SDNY No. CD-0002)
Marcellene E. Hearn (SDNY No. MH-6050)
One World Financial Center, 29th Floor
New York, New York  10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC No. 358597)
1775 Eye Street NW
Washington, D.C.  20006
Tel: (202) 261-2960
Fax: (202) 261-2999

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Tina Monshipour Foster (SDNY No. TF-5556)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York  10012
Tel: (212) 614-6439
Fax: (212) 614-6499