IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENDER AYED HAMOUD HEZAM ) <br> AL-OTEIBI AL-SHABANY and ) <br> AYED HAMOUD HEZAM AL-OTEIBI ) <br> AL-SHABANY, as Next Friend, ) <br>  ) <br>       Petitioners/Plaintiffs, ) <br>  ) <br> v.   ) <br>  ) <br> GEORGE W. BUSH, DONALD RUMSFELD, ) <br> ARMY BRIG. GEN. JAY HOOD, and ) <br> ARMY COL. MIKE BUMGARNER, ) <br>  ) <br>       Respondents/Defendants. ) | **Civil Action No. 05-2029 (JDB)** |

**PETITIONERS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR AN ORDER REQUIRING RESPONDENTS TO PROVIDE AT LEAST 30 DAYS' ADVANCE NOTICE TO THE COURT AND TO COUNSEL FOR PETITIONERS PRIOR TO THE TRANSFER OF PETITIONER FROM THE UNITED STATES NAVAL STATION AT GUANTÁNAMO BAY, CUBA**

Petitioners Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Al-Shabany") and Ayed Hamoud Hezam Al-Oteibi Al-Shabany, as Next Friend, respectfully submit this reply memorandum in further support of their Motion for an Order Requiring Respondents to Provide at Least 30 Days' Advance Notice to the Court and to Counsel for Petitioners Prior to the Transfer of Petitioner from the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo").

**PRELIMINARY STATEMENT**

The relief Petitioners seek in this motion is extremely modest: mere notice once Respondents have made a decision to transfer Al-Shabany from Guantánamo. This notice is necessary to prevent the grave and irreparable harm that would befall Al-Shabany if Respondents were permitted to secretly transfer him into the hands of another government for continued

detention. The balancing of the other equities at issue all favor entry of the order. There is no identifiable harm to Respondents from entry of the requested order. The public interest clearly supports the relief requested.

The secret transfer of Al-Shabany into the custody of another state for "continued detention, interrogation and/or prosecution" – which Respondents readily concede is a regular practice of the United States government – threatens to eviscerate Al-Shabany's fundamental rights. These rights, among others, include the habeas right recognized by the Supreme Court in *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 2698 (2004), his rights to due process as set out in *In re Guantánamo Detainee Cases,* 355 F. Supp. 2d 443, 478 (D.D.C. 2005), and his right to be free from torture.

The advance notice Petitioners seek will prevent Respondents from taking a secret, unilateral action that may subvert this Court's jurisdiction, and there is simply no doubt that this court has the power under the All Writs Act to enter the requested relief. 28 U.S.C. § 1651; *see, e.g., Qayed v. Bush*, No. 05-0454 (RMU), slip op. at 2 (D.D.C. Apr. 6, 2005) (holding that the court has the authority to enter an order which will serve to prevent an abuse of the processes put in place by *Rasul* for adjudicating Petitioners' habeas claims on their merits); *El-Banna v. Bush,* No. 04-1144 (RWR), slip. op. at 4 (D.D.C. Apr. 8, 2005) ("The outcome petitioners fear, if realized, would improperly subvert the court's ability to adjudicate these actions on their merits."). The requested order merely maintains the status quo for a short period of time in order to provide Petitioners and their counsel with time to evaluate whether filing a motion to oppose the proposed transfer is merited.

It is no legitimate answer to assert, as do Respondents, that transfer from Guantánamo is precisely the relief sought in the Petition for Writ of Habeas Corpus ("Petition"). Petitioners

seek a prompt hearing by an Article III court to determine whether Al-Shabany's incarceration is lawful and, upon a determination that it is not, Petitioners seek his immediate freedom from detention so that he may begin to rebuild his life. A secret transfer to a country that, at the direction of the United States government, continues to hold Al-Shabany indefinitely under conditions that Respondents will insist are beyond the reach of any American court is obviously inimical to every principle animating the writ of habeas corpus.

Nor is it any answer to invoke, as do Respondents, the doctrine of separation of powers, as if it were some talisman. The Judiciary routinely reviews the constitutionality of the Executive's actions and does not hesitate to enjoin the Executive from acting inconsistently with the law. The requested order would only require Respondents to provide this Court and counsel with notice of their decision once they have made it.

Petitioners respectfully submit that in ruling on this motion, the Court need not, and should not, rule on the ultimate merits of a motion opposing transfer. At this point, too much still remains unknown to Petitioners (and to this Court). Petitioners do not know if the government intends to transfer Al-Shabany and, if so, to what country and under what conditions. The self-serving declarations appended to Respondents' opposition brief speak only in abstractions. Those declarations, of course, address none of the specifics of any proposed transfer of Al-Shabany; indeed, they were written long before Al-Shabany even filed his Petition.

Requiring Petitioners to argue the merits of a motion opposing transfer at this stage is to require the impossible. Petitioners seek notice precisely so that they can understand the terms of Al-Shabany's proposed transfer. Then, and only then, will they be in a position to articulate any objection to the transfer itself. What Petitioners can do now, however, is identify with certainty

the palpable risk posed by a denial of the motion: the evisceration of Al-Shabany's established, fundamental rights as described in *Rasul* and numerous other decisions.

Petitioners are well aware that this Court and two other judges have denied similar motions in at least four other cases involving Guantánamo detainees.[1] However, Petitioners respectfully submit that these four decisions stand apart from the majority view among the judges in this District. In more than twenty cases, the courts have either granted the preliminary injunction and required 30 days' notice, or ordered 30 days' notice as part of a stay of the proceedings on the merits.[2] In four other cases, Judge Robertson asserted personal jurisdiction over the petitioner and stayed proceedings concerning release, repatriation or removal.[3] Other judges have provided more tailored relief: Judge Huvelle required 30 days' notice for non-release transfers in one case;[4] Judge Collyer ordered 30 days' notice for a transfer to Libya in

---

[1] *See Al-Anazi v. Bush*, 370 F. Supp. 2d 188 (D.D.C. Apr. 21, 2005) (Bates, J.); *Mammar v. Bush*, Civ. No. 05-573 (RJL), slip. op. at 3 (D.D.C. May 3, 2005); *O.K. v. Bush*, Civ. No. 04-1136 (JDB), Order (D.D.C. Jul. 12, 2005); *Attash v. Bush*, Civ. No. 05-1592 (RCL), Order (D.D.C. Sept. 1, 2005).

[2] *See Abdah v. Bush*, Civ. No. 04-1254 (HHK), slip. op. at 13 (D.D.C. Mar. 29, 2005); *Al-Mohammed v. Bush*, Civ. No. 05-00247 (HHK), Order (D.D.C. Mar. 30, 2005); *Al-Oshan v. Bush*, Civ. No. 05-0520 (RMU), slip. op. at 2 (D.D.C. Mar. 31, 2005); *Al-Shiry v. Bush*, Civ. No. 05-0490 (PLF), 2005 WL 1384680 (D.D.C. Apr. 1, 2005); *Al-Wazan v. Bush*, Civ. No. 05-0329 (PLF), Order (D.D.C. Apr. 1, 2005); *Al-Joudi v. Bush*, Civ. No. 05-301 (GK), 2005 WL 774847 (D.D.C. Apr. 4, 2005); *Al-Marri v. Bush*, Civ. No. 04-2035 (GK), 2005 WL 774843 (D.D.C. Apr. 4, 2005); *Qayed v. Bush*, Civ. No. 05-0454 (RMU), slip. op. at 3 (D.D.C. Apr. 6, 2005); *Tumani v. Bush*, Civ. No. 05-0526 (RMU), slip. op. at 3 (D.D.C. Apr. 6, 2005); *El-Banna v. Bush*, Civ. Nos. 04-1144, 05-23, 05-586 (RWR), slip. op. at 7 (D.D.C. Apr. 8, 2005) (entering 30-day order in 3 separate cases); *Al-Adahi v. Bush*, Civ. No. 05-280 (GK), Order (D.D.C. Apr. 28, 2005); *Anam v. Bush*, Civ. No. 04-1194 (HHK), Order (D.D.C. May 9, 2005); *Al Shamri v. Bush*, Civ. No. 05-551 (RWR), Order (D.D.C. May 11, 2005) (same); *Adem v. Bush*, Civ. No. 05-723 (RWR), Order (D.D.C. June 6, 2005); *Al Daini v. Bush*, Civ. No. 05-634 (RWR), slip. op. at 4 (D.D.C. June 6, 2005); *Alhami v. Bush*, Civ. No. 05-359 (GK), Order (D.D.C. June 9, 2005); *Mokit v. Bush*, 374 F. Supp. 2d 106 (D.D.C. June 16, 2005) (Friedman, J.); *Paracha v. Bush*, Civ. No. 04-2022 (PLF), slip. op. at 4 (D.D.C. June 16, 2005); *Ahmed v. Bush*, Civ. No. 05-665 (RWR), 2005 WL 160912 (D.D.C. July 8, 2005).

[3] *See el-Mashad v. Bush*, Civ. No. 05-0270 (JR), Order (D.D.C. Apr. 7, 2005); *Quassim v. Bush*, Civ. No. 05-0497 (JR), Order (D.D.C. Apr. 13, 2005); *Salahi v. Bush*, Civ. No. 05-0569 (JR), Order (D.D.C. Apr. 15, 2005); *Aziz v. Bush*, Civ. No. 05-0492 (JR), Order (D.D.C. Apr. 20, 2005).

[4] *Kurnaz. v. Bush*, Civ. Nos. 04-1135, 05-0392 (ESH), Order (D.D.C. Apr, 12, 2005).

4

another;[5] and Judge Walton ordered respondents to certify that any transfers were not for the purpose of continued detention on behalf of the United States, or to evade the jurisdiction of the Court.[6]

Given this evolving legal and factual landscape, Petitioners respectfully request that the Court carefully consider the arguments advanced below and in our opening brief and urge the Court to enter the requested Order.

**ARGUMENT**

**I.    The Denial Of This Motion Poses The Risk Of Severe And Irreparable Harms To Al-Shabany.**

In their Opposition, Respondents concede that it is their policy to transfer certain Guantánamo detainees "to the control of other governments for continued detention, investigation and/or prosecution" and that, as of June 2005, they had already transferred at least 67 detainees for such further detention. Resp. Opp. at 4, n. 3[7]; Third Waxman Decl. ¶ 2.[8] Should Respondents transfer Al-Shabany without notice, he stands to suffer profound and irreparable harm.

    A.    <u>The Denial Of This Motion May Subject Al-Shabany To Indefinite Detention, Interrogation And Torture.</u>

The risk that Al-Shabany may be subjected to unending detention, interrogation and torture upon his transfer into the custody of a foreign government is real – notwithstanding Respondents' vague assertion of their generalized policies and practices concerning detainee

---

[5] *Deghayes v. Bush*, Civ. No. 04-2215 (RMC), Order (D.D.C. June 14, 2005) (denying preliminary injunction motion generally but ordering 30 days notice prior to a transfer of one detainee to Libya in particular).

[6] *Almurbati v. Bush*, 366 F. Supp. 2d 72 (D.D.C. Apr. 14, 2005) (Walton, J.).

[7] Respondents' Memorandum in Opposition to Petitioners' Application for Preliminary Injunction Requiring Advance Notice of Transfer or Release, dated Oct. 24, 2005 [hereinafter "Resp. Opp."].

5

transfers.[9] Resp. Opp. at 2-5. While Respondents state that their policy is to seek "assurances" from the receiving government that a transferee will be treated humanely, they do not specify how they would ensure that these "assurances" would be honored generally, or with regard to Al-Shabany in particular. Nor do they set out what specific actions they could or would take if they learned that Al-Shabany had been tortured after his transfer. Respondents do not, and cannot, assert that the general policies and practices in use conclusively prevent the possibility of torture.[10] Respondents even admit that their policy would not preclude transferring Al-Shabany to a country where, in the Government's opinion, there is a 49% chance that he will be tortured. Prosper Decl. ¶ 3 (setting out the "more likely than not" standard).

While Petitioners do not know to which country Respondents may seek to transfer Al-Shabany, it is reasonable to assume that he is at risk of transfer to the country of his birth, Saudi Arabia. Significantly, Respondents do not rebut Petitioners' assertion, based upon press accounts,[11] that the United States government is currently seeking an agreement with Saudi

---

[8] Declaration of Matthew C. Waxman, dated June 2, 2005 [hereinafter "Third Waxman Decl."].

[9] Both Mr. Waxman and Mr. Prosper admit that their declarations provide only a "general overview" of the process of transferring a detainee and are "not intended to be [] exhaustive description[s]." Third Waxman Decl. ¶ 1; Declaration of Pierre-Richard Prosper ¶ 1, dated March 8, 2005, at 1 [hereinafter "Prosper Decl."]. They also admit that, at the end of the day, "decisions with respect to detainees are made on a case-by-case basis." Prosper Decl. ¶ 7; Third Waxman Decl. ¶ 7 (same).

[10] Human rights organizations have charged that diplomatic assurances are of limited value in preventing torture and have documented cases in which individuals have been tortured despite the presence of such diplomatic assurances. Even if some form of monitoring mechanism is put in place, the monitors may not be able to detect the abuse. *See Empty Promises: Diplomatic Assurances No Safeguard Against Torture*, Human Rights Watch, vol. 16, No. 4, at 4-6, 16, 29, 35 (April 2004), *available at* http://hrw.org/reports/2004/un0404/.

[11] Respondents disingenuously imply that this Court already determined in *Al-Anazi* that the articles cited fail to establish a factual predicate because they do not relate to transfers from Guantánamo. Resp. Opp. at 11. This is simply false. Many of the articles expressly discuss Guantánamo detainee transfers, and many post-date *Al-Anazi*. Petitioners, for example, cite the Department of State's own press release concerning the agreement reached with the Government of Afghanistan to transfer Afghani detainees from Guantánamo. See Pet. Mem. at 3-5. Furthermore, Petitioners submit that evidence of the

Arabia to transfer all of the Saudi detainees to Saudi Arabia, which would very likely include Al-Shabany. *See e.g.,* Andrea Koppel & Elise Labott, U.S. Officials: Gitmo Transfer Talks Active, CNN.com, http://www.cnn.com/2005/US/08/09/detainee.release/?section=cnn_world. As set out in Petitioners' opening brief, Saudi Arabia is known to torture prisoners. Pet. Mem. at 7. Given this serious risk, it is critical that Petitioners be provided advance notice of any transfer.

> B. <u>The Denial Of This Motion May Have The Effect Of Denying Al-Shabany A Hearing On The Merits Of His Habeas Claims.</u>

There is no doubt that if Al-Shabany is secretly transferred into a foreign prison that the transfer itself may create nearly insurmountable practical barriers to this Court's continued exercise of its jurisdiction. This argument is neither "cryptic" nor "fallacious" as Respondents charge. Resp. Opp. at 9. Al-Shabany may, for example, be prevented altogether from communicating with counsel or with the Court. It may take several months for counsel to learn where he is being held. And wherever he is transferred, the Government will undoubtedly claim this Court no longer has jurisdiction. Thus, as a practical matter, the Court's continued exercise of its jurisdiction will be undermined.

Respondents' *ipse dixit* response, that, "[t]ransfers of Guantánamo detainees are not undertaken in order to thwart the jurisdiction of the Court," Resp. Opp. at 9 n.7 (citing Third Waxman Decl. ¶ 3), is untested by cross-examination and carries no weight.[12] In any event, neither of the declarations submitted by Respondents address the specifics of Al-Shabany's case;

---

United States government's documented practice of rendering individuals suspected of terrorism to foreign countries where they are subjected to interrogation accompanied by torture has a direct bearing on the question of irreparable harm in this motion.

[12] To the extent the Court is inclined to rely on this or any other claim by either of the two declarants, we hereby seek leave to notice their depositions, on the narrow issues on which they opine in their declarations.

7

indeed, both were written well before Al-Shabany even filed his Petition, and one was written by an official, Pierre-Richard Prosper, who has since left government service.

Respondents also disingenuously argue that, far from presenting the risk of irreparable injury, a transfer out of Guantánamo on whatever terms, gives Petitioners precisely the habeas relief they seek. *See, e.g.,* Resp. Opp. at 9. Nothing could be further from the truth. Petitioners seek a prompt hearing by this Court to determine whether Al-Shabany's incarceration is lawful and to grant him immediate release from detention. A secret transfer to a country that continues to hold Al-Shabany indefinitely, under the terms of some undisclosed agreement with the United States government, is directly contrary to the relief sought by Petitioners.[13] It is absurd to suggest otherwise. As Judge Kennedy noted when confronting a similar argument by Respondents in another case:

> Respondents' assertion that they are merely 'relinquishing' custody of detainees whom the government is simply 'no longer interested in detaining' is disingenuous. . . . According to Petitioners' allegations, unanswered by the United States, they have been held at Guantánamo for periods of several years . . . . The government's invocation of sudden exigency requiring their transfer cannot trump Petitioner's established due process rights to pursue their habeas action in federal court.

---

[13] It is disingenuous in the extreme to suggest as do Respondents that the United States plays no role in the continued detention by foreign countries of individuals formerly held by the United States at Guantánamo. As the Waxman Declaration makes clear, agreements to transfer detainees are the product of a complex "dialogue" between the United States and the receiving country, involving senior officials in the United States government. (Third Waxman Decl. ¶¶ 5, 7). Moreover, press accounts state that one term of the transfer agreements to be signed by the United States and other governments requires the other government to notify the United States when the individual is released from prison; another term requires prosecution and interrogation to the fullest extent possible. *See* Andrea Koppel & Elise Labott, U.S. Officials: Gitmo Transfer Talks Active, CNN.com, http://www.cnn.com/2005/US/08/09/detainee.release/?section=cnn_world. Revealingly, one senior government official is quoted in the article as stating, "We're not changing how the detainees are classified. We're changing where they're held." *Id.*

8

*Abdah v. Bush*, Civ. No. 04-1254 (HHK), slip op. at 11 n.5 (D.D.C. Mar. 29, 2005) (granting preliminary injunction and ordering 30 days' advance notice) (internal citations omitted).

      C.      <u>A Transfer Without Notice Violates A Fundamental Tenet Of Due Process.</u>

To the extent that Respondents seek to transfer Al-Shabany to another country for detention, interrogation, and prosecution without notice, the transfer violates a fundamental tenet of due process. It is a basic concept of due process that meaningful notice is provided before such transfer is effected. *Robbins v. Kleindienst*, 383 F. Supp. 239, 247 (D.D.C. 1974) (surveying cases describing "the substantial effects that transfers have on the conditions of an inmate's confinement," and noting with approval that these courts "have held that prior to transfer the inmates must be afforded substantial procedural safeguards including notice and hearing"). *Cf. Sandin v. Conner*, 515 U.S. 472, 484 (1995) ("restraint which … exceed[s] the sentence in … an unexpected manner" implicates a liberty interest protected by the Due Process Clause, "by its own force" ). *See also Baldwin v. Hale*, 68 U.S. 223, 233 (1864) ("Parties whose rights are to be affected are entitled to be heard; and in order that they enjoy that right they must first be notified. Common justice requires that no man shall be condemned in his person or property without notice and an opportunity to make his defence."). Without notice of the transfer, this right will be gutted.

      D.      <u>Finally, Appellate Review May Be Closed If A Transfer Occurs.</u>

In addition, should this Court deny Petitioners' motion and Al-Shabany be transferred, appellate review of the issue raised in this motion may be effectively closed off to Al-Shabany. Thus, even if a right to the advance notice we seek (which has already been recognized by the majority of judges in this District who have considered the issue) is recognized in the future by the Court of Appeals or the Supreme Court, it may come too late for Al-Shabany. It is axiomatic that a right without a remedy is no right at all.

**II.    This Court Has The Power To Enter The Proposed Order.**

Notwithstanding the serious harms posed by transfer without notice, Respondents suggest this Court is powerless to act. Respondents are wrong.

 A. <u>The All Writs Act Vests This Court With the Authority To Prevent Interference With Its Jurisdiction.</u>

It is undisputed that the Supreme Court has ruled that the federal courts have jurisdiction over the habeas claims of the prisoners detained at Guantánamo, including Al-Shabany. *Rasul,* 124 S.Ct. at 2698. As set out more fully in the previous sections of this Reply, there is also no doubt that if Respondents transfer Petitioner without notice for the purpose of continued detention that the transfer will interfere with this Court's jurisdiction. This risk is particularly acute with respect to transfers to secret locations in foreign countries. It is also clear that this Court has the power under the All Writs Act, 28 U.S.C. § 1651, to issue an order preventing interference with its jurisdiction. *See Al-Anazi,* 370 F. Supp. 2d at 195 (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (All Writs Act is a remedy "pursuant to which a court may 'enjoin almost any conduct which, left unchecked, would have…the practical effect of diminishing the court's power to bring the litigation to a natural conclusion'").

This Court's authority to enter the proposed order is not predicated upon a determination that a transfer would necessarily extinguish Petitioners' claims. The judges who have ordered advance notice have premised the relief on "the threat of irreparable harm based on the *potential* elimination of [the] habeas claims."[14] *See Al-Joudi v. Bush*, No. Civ.A. 05-301 (GK), 2005 WL

---

[14] Petitioners do not concede that this Court's jurisdiction would be extinguished if Petitioner is transferred from Guantánamo. It is premature to consider this issue when the terms and precise location of the transfer are unknown to Petitioners and the Court, and it is certainly not the case that the Court automatically loses jurisdiction upon transfer out of Guantánamo. *See Rumsfeld v. Padilla*, 542 U.S. 426, 124 S.Ct. 2711, 2731 (2004) ("All members of this Court agree that . . . if jurisdiction was proper when the petition was filed, it cannot be defeated by a later transfer of the prisoner to another district");

10

774847, at *4 (emphasis added).  Nor is it predicated on any finding of evil intent on the part of Respondents.  *See generally, Ex Parte Endo*, 323 U.S. at 304, 65 S.Ct. 208 at 219.  Thus, the practical difficulties this Court might face if forced to consider Petitioners' claims while Al-Shabany languishes in a foreign prison present reason enough for this Court to issue an injunction.

      B.      <u>The Requested Relief Is Not Inimical to The Separation Of Powers.</u>

The entry of an order requiring 30 days' notice before Respondents transfer Al-Shabany from Guantánamo does not violate the separation of powers, as suggested by Respondents.  Resp. Opp. at 15.  It is already well-established that the Executive does not enjoy unfettered discretion concerning the detention and treatment of the individuals detained at Guantánamo.  *See Rasul,* 124 S.Ct. at 2698.  In any event, the requested order neither encroaches upon the Executive's ability to engage in foreign affairs nor second guesses any foreign policy decision.  All the requested order does is require Respondents to give this Court and counsel notice of their decision once they have made it.[15]

---

(Stevens, J. dissenting); *Ex Parte Endo*, 323 U.S. 283, 304, 65 S.Ct. 208, 219 (holding that transfer of prisoner from one federal district to another did not deprive the court of its jurisdiction and stating that this holding was "not colored by any purpose to effectuate a removal in evasion of the habeas corpus proceedings"); *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 49-50 (D.D.C. 2004) (federal court jurisdiction over citizen held at U.S. direction in Saudi Arabia).

    [15] In any event, should this Court determine that a consideration of the separation of powers is necessary to its decision on the merits of this limited motion, Petitioners respectfully submit that even the cases cited by Respondents do not stand for the proposition that the Executive's discretion is as absolute as Respondents posit.  Resp. Opp. at 15.  For example, although in *Holmes v. Laird*, the Court of Appeals stated that courts should tread with "circumspection" in adjudicating cases "inevitably entangled with the conduct of international relations," 459 F.2d 1211, 1215 (D.C. Cir. 1972), it continued, with language not cited by Respondents, "[t]hat is not to say that every dispute touching our foreign relations falls outside the province of the judiciary."  *Id.*  Similarly in *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, the Court of Appeals found that although the judiciary lacked jurisdiction to review the Secretary of State's determination that particular terrorist activities threatened national security, the courts could review the evidence gathered by the Secretary in determining whether an organization engaged in terrorist activities.  182 F.3d 17, 23-25 (D.C. Cir. 1999).

C.     The Law On Extradition Supports Entry Of The Proposed Order.

Respondents argue extensively that the law on extradition purportedly provides authority for their position that the Executive enjoys un-reviewable discretion to secretly deliver Al-Shabany to a prison anywhere in the world. Respondents, however, fail to explain how this position squares with the fact that the merits of extradition requests are routinely reviewed by the federal judiciary. They also fail to acknowledge the basic principle of extradition law that "no branch of the United States government has any authority to surrender an accused to a foreign government except as provided for by statute or treaty." *Quinn v. Robinson*, 783 F.2d 786, 782 (9th Cir. 1986).[16]

The extradition process, unlike the Guantánamo transfer process, protects the due process rights of the relator at every step. The relator must be charged or convicted of a crime by the requesting party in its criminal justice system. The extradition must be certified by a federal judge after a hearing in federal court in which the judge reviews the terms of the relevant extradition treaty, determines whether the crime charged is an extraditable offense, and decides whether the evidence presented on behalf of the requesting party by the United States establishes probable cause that the relator committed the crimes charged. *See United Stats v. Kin-Hong*, 100 F.3d 103, 107, 109-10 ("[t]here is the ultimate safeguard that extradition proceedings before United States Courts comport with the Due Process Clause of the Constitution"); *see also Hoxha v. Levi,* 371 F. Supp. 2d 651, 657 (E.D. Pa. 2005) (probable cause standard). After the extradition is certified, the relator may also petition for *habeas* relief.

---

[16] Petitioner is a citizen of Saudi Arabia. There is currently no extradition treaty between the United States and Saudi Arabia. *See, e.g., U.S. v. Almohandis*, 297 F. Supp. 2d 404, 406 n.1 (D. Mass. 2004). Thus, to the extent that Respondents plan to transfer Petitioner to Saudi Arabia, the United States cannot rely on the law on extradition to transfer Petitioner into the custody of Saudi Arabia for criminal prosecution and further detention. *See* 18 U.S.C. § 3184; *Quinn,* 783 F.2d at 782.

It may be true that federal judges generally follow the "rule of non-inquiry" and leave the determination of whether to withhold the extradition on humanitarian grounds to the Secretary of State. This judicial restraint, however, is exercised *only after* the relator has had a hearing on the merits of the extradition itself which comports with all the requirements of due process. Here, Respondents appeal to the law of extradition, but seek to evade the associated requirement to provide due process to the relator and go right to the rule of non-inquiry. Respondents have gotten it wrong. If the law on extradition applies to this motion at all, it only supports Al-Shabany's right to due process.[17] Inherent in due process, of course, is notice and the right to be heard. The limited notice requested by Petitioners in this motion will provide Petitioners with an opportunity to ask for a hearing on the merits of Al-Shabany's transfer similar to that provided to every relator *before* they are delivered from the custody of the United States into the custody of a foreign power for detention and prosecution.

### III. Respondents Have Not Shown That The Entry Of More Than 20 Similar Orders Has Caused Them Any Harm.

Respondents assert that the mere entry of the requested order will cause a parade of harms to the United States government's ability to conduct foreign policy and its ability to negotiate future transfers of Guantánamo detainees. Resp. Opp. at 20-21.[18] This argument is a

---

[17] Moreover, even if the rule of non-inquiry were somehow relevant here, it is not absolute and may not be constitutionally mandated. *See Kin-Hong*, 110 F.3d at 111 n.11, 112 (1st Cir. 1997); *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960) ("We can imagine situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require re-examination" of the rule that the conditions of extradition are determined by the Executive).

[18] Many of the harms set out by Respondents relate to their fears that a consideration of the merits of a motion to transfer would result in the public airing of their negotiations with foreign governments. Resp. Opp. at 20-21. This concern, while not relevant to this motion, could be easily addressed through the entry of an appropriate order by this Court. One example of such procedures already being implemented is *Quassim v. Bush*, in which Judge Robertson ordered the government to supplement the Declaration of Pierre-Richard Prosper and to disclose *in camera* "the process and status of the efforts to

blatant red herring.  The fact is that Respondents have been required to provide advance notice of transfer in more than twenty cases.[19]  In the face of that reality, Respondents have not shown that *any* of these theoretical harms have actually come to pass.  Indeed, the public record demonstrates that the opposite is true.  Since the first of these orders was entered in March 2005, Respondents have been able to transfer more than thirty-five additional detainees from Guantánamo.[20]  In or around August 2005, moreover, the United States successfully executed an agreement with the government of Afghanistan to remove all Afghan detainees to Afghanistan.[21]  The United States government is also actively negotiating similar agreements with the governments of Saudi Arabia and Yemen[22] – even though courts in this District have entered orders requiring notice in cases involving Saudi and Yemeni detainees.  *See, e.g.*, *Abdah v. Bush*, Civ. No. 04-1254 (HHK), slip. op. (Mar. 29, 2005) (thirteen Yemeni detainees); *Al-Joudi*, 2005 WL 774847, at *6 (four Saudi detainees).  These imagined harms are not a basis for denying this motion.

Finally, given that, according to Respondents themselves, it takes more than six weeks to effect a transfer once an agreement to transfer a detainee is reached with a foreign government,

---

relocate petitioners" who are Uighars who have been cleared of enemy combatant status.  *See Qassim v. Bush*, 382 F. Supp.2d 126, _, 2005 WL 2001158, at *3 (D.D.C. Aug. 19, 2005).

[19] *See supra notes* 1-3.

[20] Between March 2005 and October 1, 2005 the number of transferred detainees increased from 211 to 247.  *Compare* Resp. Opp. at 3 n.4 (stating that 247 detainees have been transferred as of October 1, 2005) *with* Third Waxman Decl. ¶ 4 (stating that 234 detainees had been transferred as of June 2, 2005); *Al-Marri v. Bush*, No. Civ.A. 04-2035 (GK), 2005 WL 774843, at *2 (D.D.C. Apr. 4, 2005) (citing to a prior Declaration of Matthew C. Waxman) (stating that 211 detainees had been transferred).

[21] *See* U.S. Dep't of State, Press Release, Aug. 4, 2005, http://www.state.gov/r/pa/prs/ps/2005/50748.html.

[22] *See* Tim Reid, *Guantánamo Inmates Face Transfers to Jails at Home,* Times (U.K.), Aug. 6, 2005, at 48; *see also* Dana Priest, *Long-Term Plan Sought For Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 (reporting plans to transfer Saudi, Afghan and Yemeni detainees to US-built prisons in their home countries).

the entry of the proposed order will not place any unnecessary burden on Respondents. *See* Motion for Extension of Time to Respond to Petitioners' Motion for Preliminary Injunction, *el-Mashad, v. Bush*, Civ. No. 05-0270 (JR) (March 18, 2005). While it is of course true that Petitioners may file a motion opposing transfer once notice is given, it is no answer to say that Petitioners should be denied notice just to relieve Respondents of the burden of defending the constitutionality of their actions.

### IV.    Denial Of The Motion Would Be Improper Before Discovery In Any Event.

There is no doubt that this Court may order discovery in a habeas case. Here, where Al-Shabany has been held incommunicado, has not yet been allowed to speak with his counsel, and all the facts surrounding Al-Shabany's transfer are exclusively held by Respondents, it would be particularly unfair to deny Petitioners' motion without some discovery.

Petitioners submit that they have established a strong and adequate basis for their motion to be granted. Nevertheless, given that Respondents have the sole possession of all the facts needed to successfully challenge their decision to render Al-Shabany to a foreign government, and have to date only submitted two generalized declarations which they concede contain no details concerning Al-Shabany, Petitioners request that if this Court is inclined to deny this motion, it should first allow Petitioners to engage in limited discovery aimed at further supporting their request for relief.

## CONCLUSION

The motion should be granted for the reasons set forth above and for all the reasons set out in Petitioner's Motion For an Order Requiring Respondents to Provide At Least 30 Days' Advance Notice to the Court and to Counsel for Petitioners Prior to the Transfer of Petitioner From the United States Naval Station at Guantánamo Bay, Cuba.

Dated: Washington, DC
      November 3, 2005

                              Respectfully submitted,
                              Counsel for Petitioners:


/s/ Paul A. Leder
RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No.: BF-0114)
Marcellene E. Hearn (SDNY No.: MH-6050)
Christopher W. Dysard (SDNY No.: CD-0002)
One World Financial Center, 29th Floor
New York, New York  10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC 358597)
1775 Eye Street NW
Washington, D.C.  20006
Tel: (202) 261-2960
Fax: (202) 261-2999

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Tina Monshipour Foster (SDNY No. TF-5556)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York  10012
Tel: (212) 614-6439
Fax: (212) 614-6499