## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BENDER AYED HAMOUD HEZAM AL-OTEIBI AL-SHABANY** *et al.*, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | **Civil Action No. 05-2029 (JDB)** |
| **GEORGE W. BUSH** *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

## PETITIONERS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Al-Shabany"), together with his Next Friend as Co-Petitioner, by and through undersigned counsel, respectfully submit this motion for a temporary restraining order to prevent Al-Shabany's removal from the United States Naval Station at Guantánamo Bay before the Court decides Petitioners' Motion for an Order Requiring Respondents to Provide at Least 30 Days' Advance Notice to the Court and to Counsel for Petitioners Prior to Transfer of Petitioner from the United States Naval Station at Guantánamo Bay, Cuba (Docket #2), unless Respondents certify that such transfer is for the purpose of releasing Al-Shabany entirely from detention.

The grounds for this motion are contained in the memorandum of points and authorities that accompanies this motion. For the reasons set forth in that memorandum, the Court should grant Petitioners' motion.

Dated:  November 11, 2005

Respectfully submitted,

Counsel for Petitioners:

/s/  Paul A. Leder
RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No. BF-0114)
Christopher W. Dysard (SDNY No. CD-0002)
Marcellene E. Hearn (SDNY No. MH-6050)
One World Financial Center, 29th Floor
New York, New York  10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC No. 358597)
1775 Eye Street NW
Washington, D.C.  20006
Tel: (202) 261-2960
Fax: (202) 261-2999

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Tina Monshipour Foster (SDNY No. TF-5556)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **BENDER AYED HAMOUD HEZAM AL-OTEIBI AL-SHABANY** *et al.*, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-2029 (JDB) |
| **GEORGE W. BUSH** *et al.*, | ) ) ) | |
| Respondents. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITIONERS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Al-Shabany"),
together with his Next Friend as Co-Petitioner, by and through undersigned counsel, rely on the
following points and authorities in support of their Motion for a Temporary Restraining Order
("TRO") to prevent Al-Shabany's removal from the United States Naval Station at Guantánamo
Bay ("Guantánamo") before the Court decides Petitioners' Motion for an Order Requiring
Respondents to Provide at Least 30 Days' Advance Notice to the Court and to Counsel for
Petitioners Prior to Transfer of Petitioner from the United States Naval Station at Guantánamo
Bay, Cuba (Docket #2) [hereinafter "Advance Notice Motion"], unless such removal is for the
purpose of releasing Al-Shabany from detention.

Pursuant to Local Rule LCvR 7(m), counsel for Petitioners conferred with counsel for
Respondents, who advised us that Respondents would not consent to this motion.

## **ARGUMENT**

On October 14, 2005, Petitioners moved for an order requiring Respondents to give
Petitioners at least 30 days' advance notice prior to transferring Al-Shabany out of Guantánamo.

Petitioners fear that, before the Court can rule on their motion, the government may secretly transfer Al-Shabany from Guantánamo. Accordingly, Petitioners seek a TRO preventing Respondents from transferring Al-Shabany pending the Court's ruling, unless such transfer is for the purpose of releasing him from detention. In similar circumstances, courts in this District have entered TROs. *See, e.g., Zarkirjan v. Bush*, Civ. Action No. 05-2053 (HHK), slip op. at 1 (D.D.C. Nov. 7, 2005) (attached hereto as Exhibit 1); *Abdah v. Bush*, Civ. Action No. 04-1254 (HHK) (RMC), 2005 WL 589812, at *5 (D.D.C. Mar. 12, 2005).

      In determining whether Petitioners are entitled to interim injunctive relief, the Court must weigh four factors: "(1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001); *see also Abdah*, 2005 WL 589812, at *2-5 (evaluating the four factors and granting motion for TRO). Petitioners need not prevail on each of these factors in order to receive injunctive relief. Rather, the preliminary injunction factors "interrelate on a sliding scale and must be balanced against each other." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *see also Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (injunctive relief may be granted "with either a high probability of success and some injury, or *vice versa*"). Here, these factors, considered together, plainly counsel in favor of the temporary relief sought by Petitioners.

I.    Petitioners May Suffer Irreparable Injury Absent Entry of the TRO

The risk of irreparable injury to Petitioners is acute.  Counsel for Respondents have explicitly refused to agree to provide informal notice to Petitioners' counsel of any proposed transfer pending a ruling on Petitioners' Advance Notice Motion.  Thus, without a court order in place, there is the distinct possibility that Respondents may circumvent the judicial process entirely by secretly transferring Al-Shabany back to his home country of Saudi Arabia, or somewhere else.  This possibility is substantial, as underscored by reports of recent transfers of detainees from Guantánamo to foreign countries, including Saudi Arabia.  *See, e.g.*, Department of Defense, News Release (Nov. 5, 2005), *available at* http://www.defenselink.mil/releases/ 2005/nr20051105-5073.html (announcing transfer of one detainee to Saudi Arabia and three detainees to Bahrain, but not identifying any of the detainees by name).  The government has made it clear that it "expects that there will be other transfers or releases of detainees." *Id.*

The question raised by the present motion is *not* whether Petitioners' Advance Notice Motion should ultimately be granted.  The question, rather, is simply whether the Court should act to ensure that Petitioners' motion can be adjudicated.  *See Abdah*, 2005 WL 589812, at *4 (entering TRO, while taking pains to note that "[t]he Court expresses no opinion on the likelihood that Petitioners will succeed in their request for a 30-day notice prior to any transfer to a foreign country").  Should Respondents be permitted to secretly remove Al-Shabany from Guantánamo, Petitioners will be permanently stripped of their right to a ruling on their motion – even though a favorable ruling would have prevented the secret removal in the first place.  This potential harm is, by any definition, irreparable.

II.    There Is a Substantial Likelihood That Petitioners Will Succeed on the Merits

There is also a substantial likelihood that Petitioners will succeed on the merits. The "merits" for purposes of this motion are the merits of Petitioners' Advance Notice Motion. To justify granting injunctive relief, Petitioners need not show "a mathematical probability of success." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). Instead, "it will ordinarily be enough" that the questions raised are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Id.* (citations and internal quotation marks omitted). Although Petitioners are aware of this Court's earlier rulings denying the relief Petitioners seek, as we have outlined in earlier submissions, we believe the issue warrants a fresh look, as these rulings stand apart from the distinct majority view in this District, and the parade of horribles initially envisaged by Respondents simply has not materialized. *See generally* Petitioners' Reply Memorandum, at 4-5 & nn.1-6. Given the sizable body of caselaw supporting Petitioners' position, at a minimum Petitioners have raised "a fair ground for litigation." *Washington Metro.*, 559 F.2d at 844.

In granting motions for advance notice, courts in this District have relied, at least in part, on the harms that may await detainees upon transfer. *See, e.g., Al-Joudi v. Bush*, Civ. Action No. 05-301 (GK), 2005 WL 774847, at *4 (D.D.C. Apr. 4, 2005). The shocking news, reported for the first time earlier this month, that the United States government has long covertly operated so-called "black sites" in Eastern Europe, Afghanistan, and elsewhere, where captives are effectively "disappeared,"[1] vividly illustrates the extreme measures the government will take to

---

[1] These facilities are so secret that, until now, the mere fact of their existence was known only to "a handful of officials in the United States" and several other people in each "host country." Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, Wash. Post, at A1 (Nov. 2, 2005). Furthermore, "CIA interrogators in the overseas sites are permitted to use the CIA's approved 'Enhanced Interrogation Techniques,' some of which are prohibited by the U.N. convention and by U.S. military law. They include tactics such as 'waterboarding,' in which a prisoner is made to believe he or she is drowning." *Id.*

conceal the fate of captives in its custody abroad, and it dramatically expands the conceivable risks posed to Guantánamo detainees by secret transfer. *See* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, Wash. Post, at A1 (Nov. 2, 2005). These risks are not fanciful, but direct and imminent. In fact, earlier this week, the German newspaper *Spiegel* reported that "Czech Interior Minister František Bublan admitted American intelligence officials asked a month ago if several people could be flow[n] in from Guantanamo Bay in Cuba for 'secure asylum,' but Prague turned down the request." *The CIA's "Black Sites": Guantanamos in Europe?*, Spiegel Online (Nov. 7, 2005), *available at* http://www.spiegel.de/international/0,1518,383670,00.html.

These disturbing reports lend new weight to the proposition, advanced in Petitioners' Advance Notice Motion, that prior notice of any transfer contemplated by the government is essential to the protection of Al-Shabany's established, fundamental rights. And, in turn, the strength of that motion magnifies the harm to Petitioners that would result from a covert transfer by the government, which would snatch a decision on the merits of the Advance Notice Motion out of the Court's hands.

III.     <u>Respondents Will Suffer Negligible Injury, If Any, As a Result of a TRO</u>

Any injury to Respondents flowing from a TRO is truly *de minimis*. The relief sought by Petitioners here is temporary. The sole function of the TRO is to give the Court a meaningful opportunity to resolve the Advance Notice Motion on its merits; in no way does entry of a TRO signal that Petitioners will ultimately prevail on that motion. Particularly since Respondents concede that it takes more than six weeks to effect a transfer once an agreement has been reached with a foreign government, *see* Petitioners' Reply Memorandum at 14-15, any inconvenience to

Respondents resulting from entry of a TRO is dwarfed by the irreparable harm that Petitioners

may suffer if their motion for a TRO is denied.

IV.    A TRO Would Further the Public Interest

Finally, entry of the TRO would further the public interest.  The public has a substantial

interest in ensuring that justiciable disputes are resolved by courts.  Here, if no TRO is put in

place, Respondents may wholly circumvent this process by taking matters into their own hands

and abruptly transferring Al-Shabany to a foreign country before the Court is able to resolve

Petitioners' underlying motion.  Such conduct would effectively moot the motion and subvert the

Court's status as ultimate arbiter, directly contrary to the public interest.  *Cf. Abdah*, 2005 WL

589812, at *4 ("The Court can see no injury to the public interest from granting a temporary

injunction here.").

\*        \*        \*

In summary, a TRO is unquestionably warranted.  The matter of whether Petitioners

deserve advance notice of Al-Shabany's transfer is now before the Court.  We seek simply to

keep it there so that the Court may make a final ruling.

## CONCLUSION

For all the reasons set forth above, Petitioners respectfully request that the Court grant

Petitioners' Motion for a Temporary Restraining Order, and direct Respondents not to transfer

Al-Shabany from Guantánamo before Petitioners' Advance Notice Motion is decided, unless

Respondents certify that such transfer is for the purpose of releasing Al-Shabany entirely from detention.

Dated:  November 11, 2005                    Respectfully submitted,

                                             Counsel for Petitioners:

                                             /s/  Paul A. Leder
                                             RICHARDS SPEARS KIBBE & ORBE LLP
                                             Brian S. Fraser (SDNY No. BF-0114)
                                             Christopher W. Dysard (SDNY No. CD-0002)
                                             Marcellene E. Hearn (SDNY No. MH-6050)
                                             One World Financial Center, 29th Floor
                                             New York, New York  10281
                                             Tel: (212) 530-1800
                                             Fax: (212) 530-1801

                                             Paul A. Leder (DC No. 358597)
                                             1775 Eye Street NW
                                             Washington, D.C.  20006
                                             Tel: (202) 261-2960
                                             Fax: (202) 261-2999

                                             *Of Counsel*
                                             Barbara Olshansky (SDNY No. BO-0057)
                                             Tina Monshipour Foster (SDNY No. TF-5556)
                                             Gitanjali S. Gutierrez (SDNY No. GG-1234)
                                             CENTER FOR CONSTITUTIONAL RIGHTS
                                             666 Broadway, 7th Floor
                                             New York, New York  10012
                                             Tel: (212) 614-6439
                                             Fax: (212) 614-6499

**LOCAL RULE LCvR 65.1(a) CERTIFICATE**

Pursuant to Local Rule LCvR 65.1(a), I hereby certify that counsel for Petitioners have

provided notice to counsel for Respondents that Petitioners are filing this Motion for a

Temporary Restraining Order on November 11, 2005, and have furnished counsel for

Respondents, via e-mail, copies of all papers presented by Petitioners to the Court in connection

with this Motion.


/s/  Paul A. Leder