IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENDER AYED HAMOUD HEZAM <br> AL-OTEIBI AL-SHABANY *et al.*, <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH *et al.*, <br><br> Respondents. | Civil Action No. 05-2029 (JDB) |

**PETITIONERS' OMNIBUS MOTION TO ORDER RESPONDENTS
(1) TO INFORM COUNSEL WHETHER PETITIONER HAS BEEN DEEMED AN
"ENEMY COMBATANT" OR AN "NLEC," (2) TO PROVIDE A FACTUAL RETURN,
(3) TO PROVIDE INFORMATION ABOUT PETITIONER'S HEALTH STATUS,
AND (4) TO PRESERVE ALL INFORMATION RELATING TO PETITIONER**

Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Al-Shabany"), together with his Next Friend as Co-Petitioner, by and through undersigned counsel, respectfully submit this motion requesting the Court to order Respondents:

1. to inform counsel for Petitioners whether Al-Shabany has been deemed an "enemy combatant" or an "NLEC" ("no longer enemy combatant");

2. to provide counsel for Petitioners with a factual return regarding Al-Shabany;

3. to grant undersigned counsel immediate (and, thereafter, periodic) telephone access to Al-Shabany so that we may ascertain his medical condition or, in the alternative, to provide notice to undersigned counsel within 24 hours of the commencement of any forced feeding of Al-Shabany, and, if he is being force-fed, to provide (a) medical records spanning the period beginning one week prior

to the date forced feeding commenced, and (b) updated medical records, on a weekly basis (at a minimum) until forced feeding concludes; and

4.  to preserve and maintain all evidence, documents and information regarding Al-Shabany, without limitation, now or ever in Respondents' possession, custody or control.

The grounds for this motion are contained in the memorandum of points and authorities that accompanies this motion. For the reasons set forth in that memorandum, the Court should grant Petitioners' motion.

Dated: November 11, 2005

Respectfully submitted,

Counsel for Petitioners:

/s/ Paul A. Leder
RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No. BF-0114)
Christopher W. Dysard (SDNY No. CD-0002)
Marcellene E. Hearn (SDNY No. MH-6050)
One World Financial Center, 29th Floor
New York, New York 10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC No. 358597)
1775 Eye Street NW
Washington, D.C. 20006
Tel: (202) 261-2960
Fax: (202) 261-2999

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Tina Monshipour Foster (SDNY No. TF-5556)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BENDER AYED HAMOUD HEZAM AL-OTEIBI AL-SHABANY *et al.*,<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH *et al.*,<br><br>Respondents. | Civil Action No. 05-2029 (JDB) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITIONERS' OMNIBUS MOTION TO ORDER RESPONDENTS
(1) TO INFORM COUNSEL WHETHER PETITIONER HAS BEEN DEEMED AN
"ENEMY COMBATANT" OR AN "NLEC," (2) TO PROVIDE A FACTUAL RETURN,
(3) TO PROVIDE INFORMATION ABOUT PETITIONER'S HEALTH STATUS,
AND (4) TO PRESERVE ALL INFORMATION RELATING TO PETITIONER**

Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Al-Shabany"), together with his Next Friend as Co-Petitioner, by and through undersigned counsel, rely on the following points and authorities in support of their omnibus motion requesting this Court to order Respondents:

1. to inform counsel for Petitioners whether Al-Shabany has been deemed an "enemy combatant" or an "NLEC" ("no longer enemy combatant");

2. to provide counsel for Petitioners with a factual return regarding Al-Shabany;

3. to grant undersigned counsel immediate (and, thereafter, periodic) telephone access to Al-Shabany so that we may ascertain his medical condition or, in the alternative, to provide notice to undersigned counsel within 24 hours of the commencement of any forced feeding of Al-Shabany, and, if he is being force-fed, to provide (a) medical records spanning the period beginning one week prior

to the date forced feeding commenced, and (b) updated medical records, on a weekly basis (at a minimum) until forced feeding concludes; and

4. to preserve and maintain all evidence, documents and information regarding Al-Shabany, without limitation, now or ever in Respondents' possession, custody or control.

Pursuant to Local Rule LCvR 7(m), counsel for Petitioners conferred with counsel for Respondents, who advised us that Respondents would not consent to this motion.

## ARGUMENT

For more than three years Petitioner Al-Shabany has been held by Respondents in military custody at the United States Naval Station at Guantánamo Bay ("Guantánamo") without charge, without access to counsel, and without anything resembling due process. Due to the rigorous security clearance procedures adopted by the government, counsel for Petitioners (as counsel new to the representation of a Guantánamo detainee) currently have no access to our client and may not gain such access for a significant period of time. In the meantime, however, we must make important decisions that may permanently affect the course of the litigation. Accordingly, through this omnibus motion, we seek several specific and finite categories of basic information regarding Al-Shabany, which is uniquely known to Respondents.

An order directing Respondents to divulge this limited information imposes no additional burden on Respondents, for the information is already at their fingertips. At the same time, this information is absolutely indispensable to counsel for Petitioners. Without it, we cannot adequately represent our clients. Given that "the power of inquiry on federal habeas corpus is plenary," *Harris v. Nelson*, 394 U.S. 286, 292 (1969) (citation and quotation marks omitted), we

submit that it is well within the Court's authority to order disclosure of the limited information we request.

      I.      The Court Should Order Respondents to Inform Counsel for Petitioners Whether Al-Shabany Has Been Deemed an "Enemy Combatant" or an "NLEC"

Despite our specific requests, counsel for Respondents have, to date, refused to tell us whether Al-Shabany has been deemed an "enemy combatant" or an "NLEC" ("no longer enemy combatant") after a proceeding before a Combatant Status Review Tribunal ("CSRT"). This is a fact that is critical to our informed representation of Al-Shabany, and there is no legitimate reason why Respondents should continue to withhold it.

As background, on July 7, 2004, just nine days after the Supreme Court issued its decisions in *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686 (2004), and *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633 (2004), Deputy Secretary of Defense Paul Wolfowitz issued an order (the "CSRT Order") which defined the term "enemy combatant" and established CSRTs to review the "enemy combatant" status of each detainee at Guantánamo. On March 29, 2005, the Secretary of the Navy announced that CSRT proceedings for all detainees at Guantánamo had been completed, and that the "enemy combatant" status of 520 of 558 total detainees had been confirmed. *See* Transcript of Special Briefing by Secretary Gordon England on Combatant Status Review Tribunals (Mar. 29, 2005), *available at* http://www.defenselink.mil/transcripts/2005/tr20050329-2382.html. Based on the categorical nature of this announcement, it is undoubtedly true that a CSRT reviewed Al-Shabany's status. The outcome of that review, however, remains unknown to counsel for Petitioners (but, obviously, is known to Respondents).

While the government has advised us that Al-Shabany is currently detained at Guantánamo – at least as of October 31, 2005, *see* E-mail from Andrew Warden to Christopher Dysard, dated Oct. 31, 2005 (attached hereto as Exhibit 1) – this is in no way equivalent to a

confirmation that he is an "enemy combatant." Indeed, as of August 31, 2005, the United States government has acknowledged that 10 of the 38 individuals deemed by CSRTs to be "NLEC"s ("No Longer Enemy Combatants") are still detained at Guantánamo. *See* Department of Defense Fact Sheet, dated Aug. 31, 2005, *available at* http://www.defenselink.mil/news/Aug2005/d20050831sheet.pdf.

A court order requiring the government to disclose information about Al-Shabany's status is necessary because the government has routinely withheld such information from counsel for other detainees and from the courts, even when the detainees have been deemed NLECs. For example, in *Qassim v. Bush*, 382 F. Supp. 2d 126 (D.D.C. 2005), the government did not inform counsel or the court for over four months that the detainees, two Muslim Uighurs from China, had been deemed NLECs, seeking instead to stay the habeas proceedings. *Id.* at 126-27. Indeed, it was only after counsel were granted access to their clients at Guantánamo that they learned of their clients' designation. *Id.* at 127.[1] In addition, just days ago, Respondents conceded for the first time that the petitioner in *Zakirjan v. Bush*, although still in custody at Guantánamo, had been "determined to be no longer classified as an enemy combatant." *See* Respondents' Memorandum in Opposition to Petitioner's Motions for Temporary Restraining Order and Preliminary Injunction Barring Transfer or Release or Requiring Advance Notice of Transfer or Release, *Zakirjan v. Bush*, Civ. Action No. 05-2053 (HHK), at 3 (attached hereto as Exhibit 2).

The Supreme Court has approved only one rationale for holding a detainee at Guantánamo: that he is an "enemy combatant." *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct.

---

[1] In the Uighurs' case, at least, there is good reason not to send them back to their native country: "It is undisputed that the government cannot return these petitioners to China, because they would be persecuted there." *Qassim*, 382 F. Supp. 2d at 128. However, the fact that there is an arguable justification for continued detention does not detract from our position that counsel deserves notice of the detainee's status.

2633, 2639-40 (2004). Without knowing whether such a threshold determination has been made as to Al-Shabany, we cannot begin to effectively represent Petitioners.

II.     The Court Should Order Respondents to Provide a Factual Return

If Al-Shabany's status was in fact reviewed by a CSRT, Respondents are in possession of a file consisting of the record of the CSRT proceeding. *See Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199 (D.D.C. 2005) (Bates, J.) (Department of Defense has compiled such "factual returns" "for each Guantanamo detainee"). We ask that Respondents be directed forthwith to provide counsel with this factual return. Courts in this District, including this Court, have routinely required production of this material. *See id.* at 200 (requiring production of the factual return within 120 days); *see also Ahmed v. Bush*, Civ. Action No. 05-665 (RWR), 2005 WL 1606912, at *2 (D.D.C. July 8, 2005) (same, 30 days); *Mokit v. Bush*, 374 F. Supp. 2d 106, 106 (D.D.C. 2005) (same, 90 days); *Kurnaz v. Bush*, Civ. Action Nos. 04-1135, 05-0392 (ESH), 2005 WL 839542, at *3 (D.D.C. Apr. 12, 2005) (same, 90 days).[2]

As this Court has recognized, the factual return is "necessary for petitioners' counsel effectively to represent petitioners. Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." *Al-Anazi*, 370 F. Supp. 2d at 200. Given the unquestionable importance of this "basic factual information," we ask that Respondents be directed to produce to counsel for Petitioners the unclassified version of the factual return regarding Al-Shabany within 30 days. *See Ahmed*, 2005 WL 1606912, at *2 (requiring production in 30 days). Additionally, we ask that Respondents be directed to produce the classified information redacted from the initially-produced version within 15 days of

---

[2] On November 3, 2005, Petitioners filed a Motion for the Immediate Issuance of a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2243 or, Alternatively, to Issue an Order to Show Cause. That motion provides an additional, or alternative, basis for production of the factual return.

counsel's gaining the required security clearance. *Cf. In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 452 (D.D.C. 2005) (describing government's production of classified versions of factual returns to counsel "with appropriate security clearances").

    III.    The Court Should Order Respondents to Provide Information to Counsel Concerning Al-Shabany's Participation in a Hunger Strike

In August 2005, a sizable group of Guantánamo detainees went on a hunger strike to protest their continuing detention without charge or adequate process, as well as the appalling conditions of their incarceration. *See generally Al-Joudi v. Bush*, Civ. Action No. 05-301 (GK), slip op. at 2-3 (D.D.C. Oct. 26, 2005) (attached hereto as Exhibit 3); *Detainees' Hunger Strike in Month 2*, Associated Press (Sept. 10, 2005). Three months later, the hunger strike continues. The estimated number of detainees engaged in the current strike has varied over time, ranging from 24 to more than 200. *See Al-Joudi*, slip op. at 3 & n.1 (noting petitioners' estimate of between 131 and 210 participants as of September, and government's assertion that 24 detainees were on hunger strike as of October 14); Josh White, *Lawyers Seek Improved Conditions for Suicidal Detainee*, Wash. Post, at A8 (Nov. 5, 2005) (noting military officials' assertion that 27 detainees are currently on strike).

Due to the government's security clearance controls, we do not yet have access to Al-Shabany, nor do we have any way of evaluating or monitoring his health status. Accordingly, we have asked Respondents either to tell us whether he is on a hunger strike, or to grant us telephone access to Al-Shabany so that we may ascertain his medical condition ourselves. Respondents have refused our requests outright. Petitioners therefore request that the Court direct Respondents to grant Petitioners' counsel immediate (and thereafter, periodic) telephone access to Al-Shabany so that we may determine his condition directly, or, alternatively, to provide the following information:

 (1)  whether Al-Shabany is currently on a hunger strike;

 (2)  whether Al-Shabany is currently being force-fed;

 (3)  notice to counsel within 24 hours of any forced feeding of Al-Shabany; and

 (4)  if, now or in the future, Al-Shabany is being force-fed,

   (a)  medical records spanning the period beginning one week prior to the date forced feeding commenced, and

   (b)  updated medical records, on a weekly basis (at a minimum) until forced feeding concludes.

Presented with a similar motion just weeks ago, Judge Kessler ordered exactly the relief we seek – even for counsel, like the undersigned, who had not yet received security clearance and thus had not yet visited his clients at Guantánamo. *See Al-Joudi*, slip op. at 8.

In *Al-Joudi*, Judge Kessler analyzed the petitioners' motion under the standard for the issuance of preliminary injunctions. *Id.* at 11-20. We respectfully submit that, under the circumstances, this approach is unnecessarily demanding. As outlined above, it is well-documented that a significant number of detainees are currently on hunger strike, and the government has never identified them publicly by name. It is a distinct possibility that Al-Shabany is among this group, and we seek simply to eliminate all doubt as to this issue. If Al-Shabany is in fact on a hunger strike, or in the future goes on a hunger strike, we believe the analysis is straightforward. Respondents, as the custodians of Al-Shabany, have a continuing obligation to preserve and maintain his access to counsel and the Court, *cf. id.* at 16-19, and this obligation compels them to keep counsel apprised of Al-Shabany's health status.

In any event, if Al-Shabany is now or in the future on a hunger strike, the four preliminary injunction factors, *see generally Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001) ("(1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether

an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest"), militate strongly in favor of the relief we seek.[3] Under the unique circumstances resulting from Al-Shabany's continued detention in Guantánamo, where he is being held virtually *incommunicado* and beyond the reach of his counsel, a preliminary injunction is warranted.

*First*, if such relief is not granted, Al-Shabany may suffer irreparable injury. There is no doubt that, if Al-Shabany is on a hunger strike, his health is in imminent danger. *See Al-Joudi*, slip op. at 14-15 (concluding that "the threat of death or serious physical deterioration is real and imminent"). Al-Shabany risks permanent physical injury or even death, consequences that may be avoided if he is afforded the opportunity to confer meaningfully with counsel and is thus able to access the Court in order to enforce his rights. *See id.* at 12-15. *Second*, there is a substantial likelihood that Petitioners will succeed on the merits of an access to counsel claim, *see id.* at 18 (concluding same since "access to counsel by Petitioners is illusory unless counsel have sufficient access to their clients to be informed about their current physical condition"), as well as on the merits of the underlying habeas petition itself. *Third*, the logistical burden of monitoring detainees participating in the hunger strike pales in comparison to the irreparable injury Al-Shabany faces. *See id.* at 19. *Fourth*, the narrowly-drawn relief we seek serves the public interest "by ensuring that habeas petitioners have access to counsel so that they can meaningfully challenge their detention, and the courts can adjudicate their claims." *Id.*

In *Rasul*, the Supreme Court granted detainees at Guantánamo the right to challenge their detention. 124 S. Ct. at 2698. To do so in a meaningful way, the detainees must have continuing

---

[3] Critically, the preliminary injunction factors "interrelate on a sliding scale and must be balanced against each other." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

access to counsel and the Court. *Al-Joudi*, slip op. at 20. The limited order we seek simply assures Al-Shabany such access.

    IV.    The Court Should Order Respondents to Preserve and Maintain All Evidence, Documents, and Information Regarding Al-Shabany, Without Limitation, Now or Ever in Respondents' Possession, Custody, or Control

Finally, we move for entry of an order directing Respondents to preserve and maintain all evidence, documents,[4] and information regarding Al-Shabany, without limitation, now or ever in Respondents' possession, custody, or control.

Petitioners need not meet the four-part preliminary injunction test in order to protect relevant documents from destruction. *See Al-Marri v. Bush*, Civ. Action No. 04-2035 (GK), slip op. at 1 (D.D.C. Mar. 7, 2005) (attached hereto as Exhibit 4) ("[A] document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery.") (citations and internal quotation marks omitted); *but see Battayav v. Bush*, Civ. Action No. 05-714 (RBW), slip op. at 4 (D.D.C. May 18, 2005) (attached hereto as Exhibit 5) (applying preliminary injunction standard to motion for preservation order and denying relief, but ruling that respondents are already required to preserve documents under prior preservation orders).[5] Rather, Petitioners must demonstrate merely that a preservation order is "necessary and not unduly burdensome." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004). This showing is easily made here.

---

[4] As used in this memorandum, "documents" has the meaning provided under Rule 34 of the Federal Rules of Civil Procedure.

[5] Particularly here, where Respondents maintain sole custody and control of the documents relevant to the adjudication of Petitioners' claims, and Petitioners' counsel's access to *any* information is so severely restricted, it would be inappropriate to require Petitioners to identify specific instances of document destruction as a condition to issuance of a preservation order. *See Abdah v. Bush*, Civ. Action No. 04-1254 (HHK), slip op. at 2 (D.D.C. June 10, 2005) (attached hereto as Exhibit 6).

To begin, a preservation order is necessary. Petitioners cannot hope to enforce their rights without all the relevant evidence. Inasmuch as "the discovery provisions of the Federal Rules of Civil Procedure do not automatically apply in whole to federal habeas corpus proceedings," *El-Banna v. Bush*, Civ. Action Nos. 04-1144, 05-23 (RWR), 2005 WL 1903561, at *1 (D.D.C. July 18, 2005) (citing *Harris v. Nelson*, 394 U.S. at 294 n.5, 298-99), it cannot be presumed that a habeas litigant has the same preservation obligations that are imposed upon civil litigants in the usual course. *Id*. What is more, there is reason to believe that, without the Court's intervention, relevant evidence may be destroyed. The mishandling of documents and efforts at obstruction in connection with other investigations into detainee abuse are well-documented. *See, e.g.*, Tim Golden, *Army Faltered in Investigating Detainee Abuse*, N.Y. Times, at A1 (May 22, 2005) (reporting that "documents disappeared" during the Army's investigation into detainee abuse at a U.S. military center in Bagram, Afghanistan); Redacted FBI "Urgent Report," at 2 (June 25, 2004) (attached hereto as Exhibit 7) (reporting that unidentified individuals "were engaged in a cover-up of [the] abuses" of civilian detainees in Iraq). Entry of the requested preservation order, which is tailored to preserve information that is either relevant to the issues raised by Petitioners' habeas petition or is reasonably calculated to lead to the discovery of admissible evidence, will leave no room for confusion about Respondents' preservation obligations.

Additionally, a preservation order will not be unduly burdensome for Respondents. Presumably, Al-Shabany's entire dossier is limited in size and maintained by the government, at least largely, in a single repository. Further, Respondents are already obliged by numerous court orders to preserve a wide array of information about Guantánamo detainees. *See, e.g., Al-Marri*, slip op. at 2 (ordering Respondents to "preserve and maintain all evidence and information

regarding the torture, mistreatment, and abuse of detainees now at the Guantanamo Bay detention facility"); *see also Al-Anazi v. Bush*, Civ. Action No. 05-0345 (JDB), slip op. at 2 (D.D.C. Oct. 28, 2005) (attached hereto as Exhibit 8) (denying motion for preservation order "because respondents have a pre-existing duty to preserve the very information that this motion addresses," pursuant to orders issued in *Al-Marri* and other cases). Adding information about Al-Shabany to the materials Respondents are already under an obligation to preserve will not be oppressive for Respondents. *See Al-Marri*, slip op. at 1-2 (concluding that "entering a preservation order will inflict no harm or prejudice upon [respondents]"). Courts in other detainee cases have not hesitated to enter orders identical to the one we request here. *See, e.g., El-Banna*, 2005 WL 1903561, at *3.

## CONCLUSION

For all the reasons set forth above, Petitioners respectfully request that the Court grant Petitioners' Omnibus Motion in its entirety, and enter the attached Order.

Dated: November 11, 2005

Respectfully submitted,

Counsel for Petitioners:

/s/  Paul A. Leder
RICHARDS SPEARS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No. BF-0114)
Christopher W. Dysard (SDNY No. CD-0002)
Marcellene E. Hearn (SDNY No. MH-6050)
One World Financial Center, 29th Floor
New York, New York  10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC No. 358597)
1775 Eye Street NW
Washington, D.C.  20006
Tel: (202) 261-2960
Fax: (202) 261-2999

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Tina Monshipour Foster (SDNY No. TF-5556)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York  10012
Tel: (212) 614-6439
Fax: (212) 614-6499