APPROVED FOR PUBLIC FILING BY CSO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENDER AYED HAMOUD HEZAM<br>AL-OTEIBI AL-SHABANY *et al.*,<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH *et al.*,<br><br>Respondents/Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. CV 05-2029 (JDB)<br>)<br>)<br>)<br>)<br>) |

### PETITIONERS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR IMPOSITION OF SANCTIONS AND IMMEDIATE RETURN OF CONFISCATED ATTORNEY-CLIENT MATERIALS

**I.      The Court Should Grant the Primary Relief Requested by Mr. Al-Shabany.**

This Reply is respectfully submitted by Petitioners Bender Al-Oteibi Al-Shabany ("Al-Shabany") and Ayed Al-Oteibi Al-Shabany, as Next Friend (collectively "Petitioners"), in further support of their Motion for Imposition of Sanctions and Immediate Return of Confiscated Attorney-Client Materials.[1]

Respondents filed the exact same Reply and Opposition[2] in every case in which motions are pending related to the confiscation of attorney-client materials by the Naval Criminal Investigative Service and requested that all of the motions be decided on a coordinated basis. (Resp. Opp. at 1). The request for consolidation should be denied.

Respondents claim that the legal arguments made by the various petitioners are so similar that coordination is merited. (*Id.*). At least with respect to our clients, this is simply incorrect.

---

[1] On July 24, 2006, Petitioners filed their Memorandum of Points and Authorities (1) in Opposition to Respondents' Motion for Procedures Related to Review of Certain Detainee Materials, and (2) in Support of Petitioners' Motion for Imposition of Sanctions and Immediate Return of Confiscated Attorney-Client Materials ("Pet. Mem." or "Petitioners' Memorandum").

[2] The government styled its filing as Reply Memorandum in Support of July 7, 2006 Motion for Procedures Related to Review of Certain Detainee Materials and Opposition to Petitioners' Requests for Relief Associated with Impoundment of Detainee Materials ("Reply and Opposition" or "Resp. Opp.").

Petitioners did not make many of the arguments assailed by Respondents in their cookie-cutter brief and, more importantly, Respondents failed even to address our argument that the confiscation of Mr. Al-Shabany's legal papers is interfering with his access to counsel and the courts. (Pet. Mem. at 16-17).

Moreover, the resolution of the disputes at issue hinge on more than legal questions. A party who is seeking access to another party's privileged documents bears the burden of proof that a review is warranted. In the case of attorney-client materials, that factual showing is tantamount to probable cause. (Pet. Mem. at 9-10). The government's desire for a mass adjudication for the purpose of expediency does not in any way relieve it of its factual burden in each and every case. The one-size-fits-all filings by the government fall far short of this burden. There is not one single fact about Mr. Al-Shabany alleged in either filing. Indeed, the only mention of Mr. Al-Shabany is in the caption. It is simply inappropriate for an issue as critical as the invasion of the attorney-client privilege to be decided on the basis of a generic factual record.

Petitioners submit that the Court should consider the arguments actually made by Petitioners *in this action:* (i) the impoundment of Mr. Al-Shabany's legal documents was improper because it violated the Protective Order[3] (Pet. Mem. at 6-7); (ii) the impoundment was improper because the government has failed to make an individualized showing supporting its impoundment of Mr. Al-Shabany's legal papers (Pet. Mem. at 9-16); (iii) the government interfered with Mr. Al-Shabany's access to counsel (Pet. Mem. at 16-17); (iv) the Court should evaluate appropriate sanctions for the government's improper conduct given its delays in informing the Court and Petitioners of the confiscation (Pet. Mem. at 18-19); and (v) the Court

---

[3] On November 17, 2005 (dkt. 11) this Court entered the Amended Protected Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Protective Order") and the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba.

2

should accordingly deny Respondents' motion for the implementation of a Filter Team and order the immediate return to Mr. Al-Shabany of his documents (Pet. Mem. at 20-23).

Based on these arguments, Petitioners respectfully submit that the Court should consider the relief actually requested by Petitioners *in this action*: (i) the immediate return of Mr. Al-Shabany's legal papers; and (ii) the provision of a statement under oath by a person with actual knowledge describing the materials seized from Mr. Al-Shabany and what has been done with his legal mail, attorney-client materials and other privileged materials so that the Court may determine what sanctions are appropriate; or (iii) in the alternative, particularized discovery into the circumstances surrounding the confiscation of Mr. Al-Shabany's legal papers, and if upon the conclusion of discovery, the Court deems review of any of Mr. Al-Shabany's documents to be appropriate, a review by either the Court or a special master.

While Petitioners vigorously oppose consolidation, to the extent that the Court determines that some form of coordination is merited, that process must, at the very least, provide each petitioner in each case with individualized consideration concerning: (i) whether the government has met its factual burden in his particular case; and (ii) the specific affirmative relief requested by that petitioner.

A.  **The Government Has Not Established that its Search and Confiscation Was Reasonably Related to a Legitimate Penological Interest.**

In arguing that its actions were proper, the government overstates the holdings of the cases it cites. (Resp. Opp. at 6-7). Those cases do not stand for the proposition that prison officials have absolute discretion to take any and all actions in the name of security regardless of the impact on prisoners' rights. Rather, although courts accord significant deference to prison officials, their actions must still meet the standard set out in *Turner v. Safely* – they must prove

3

that any prison procedure "that burdens a fundamental right is 'reasonably related' to legitimate penological objectives" and does not "represent[] an 'exaggerated response' to those concerns." 282 U.S. 78, 87, 89 (1987). Moreover, with respect to the treatment of legal mail, it is well established that courts "balance the interest of prison security against the possibility of tampering that could unjustifiably chill the prisoner's right of access to the courts or impair the right to be represented by counsel." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003). Indeed, of the cases cited by the government, only *Goff v. Nix* involves a prisoner's access to his legal papers, and in *Goff*, the Eighth Circuit affirmed the relief requested here – the immediate return of the prisoner's legal papers. *See Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997).

The government simply has not pled facts sufficient to meet the *Turner* standard. In the recitation of facts in the government's filings, there is not a single fact specific to Mr. Al-Shabany. There is also not a single allegation tying Mr. Al-Shabany to any of the unidentified prisoners or documents described in the affidavits filed by Respondents in support of their request for relief.[4] This complete failure to allege specific facts about Mr. Al-Shabany is fatal to the government's motion in his case. Moreover, the record actually submitted is quite thin – consisting of one affidavit submitted by Rear Admiral Harris which is premised almost entirely on hearsay, and another affidavit submitted by Special Agent Kisthardt which consists mainly of conclusory descriptions of documents seized from unnamed prisoners.[5] As described in Petitioners' Memorandum, the generic factual record gives every indication that the prison-wide search and confiscation constituted an "exaggerated response" to the three deaths. (Pet. Mem. at 10-16). While the allegations that a living prisoner may have used paper stamped as privileged

---

[4] *See* Declaration of Rear Adm. Harry B. Harris ("Harris Decl."); Declaration of Special Agent Carol Kisthardt ("Kisthardt Decl.").
[5] Indeed, Respondent's Reply and Opposition contains a number of facts which are unsupported by affidavits or otherwise. *See e.g.*, Resp. Opp. at 5.

4

to communicate with two of the deceased may support the search of the living prisoner's cell, it would not warrant the mass search and seizure that followed. The facts alleged also do not support the government's request to review every single envelope marked as privileged. Indeed, the government admits in its opposition that no improper materials were found in the legal mail envelopes it has reviewed. (Resp. Opp. at 16 n.17).

The government further asserts that *Goff v. Nix* supports its request for a Filter Team because the prison officials in *Goff* were permitted to "scan" the documents for "contraband" during the return process and the definition of "contraband" included written materials. (Resp. Opp. at 18). There is a fundamental difference, however, between scanning a document to confirm it is not contraband, which is what was approved in *Goff*, 113 F.3d at 181-82, and engaging in the wholesale review for the purposes of conducting an investigation proposed by Respondents here.[6] The Court should look at the intent – as expressed by the government in its own filings – behind the government's request for a Filter Team. In their opening brief, the government repeatedly states that the purpose of the Filter Team is to review the documents for the investigation and it is only in the Reply and Opposition that the government characterizes the purpose of the Filter Team as sorting privileged documents from non-privileged documents. *Compare* Respondents' Motion for Procedures Related to Review of Certain Detainee Materials ("Resp. Mot.") at 20 (stating there is "a manifest need for *review* of all of the detainee materials, including legal materials, in order to conduct a complete investigation") (emphasis added); Resp. Mot. at 15, 16, 17, 18, 22 (same); *see also* Resp. Mot. at 11 n.10 (discussing how if upon "*review*" of attorney-client materials information prohibited by protective order is discovered, Filter Team can alert the Court) *with* Resp. Opp. at 20 ("the object of the Filter Team review is to

---

[6] *See also Sallier*, 343 F.3d at 874 (expressing the common rule that legal mail "can be opened (although not read) and inspected for contraband [and] such activity must take place in the presence of the recipient, if such a request has been made by the prisoner.")

5

*sort* legitimate attorney-client communications from unprivileged documents . . . ."). The proposed order accompanying Respondents' motion also states without any limitations: "Respondents are hereby authorized to *review* any attorney-client communications between a Guantanamo Bay detainee and his counsel." [Respondents' Proposed] Order Regarding Review of Certain Detainee Materials at 1 (emphasis added).

    **B.**    **A Recent Court of Appeals Order Supports the Immediate Return of Mr. Al-Shabany's Documents.**

On July 28, 2006, the United States District Court of Appeals for the District of Columbia rejected a request for a government filter team to review documents that had been seized from the offices of Representative William J. Jefferson.[7] *See United States v. Rayburn House Office Bldg., Room 2113, Washington, DC 20515,* No. 06-3105 (D.C. Cir. July 28, 2006) (order) (attached hereto as Exhibit A). The filter team procedures rejected by the D.C. Circuit were remarkably similar to the procedures requested by Respondents in this case. The rejected proposal was to have a filter team, composed of Department of Justice attorneys and an FBI agent with no role in the investigation, review documents for responsiveness and for legislative privileges. Non-responsive documents were to be returned to the Congressman; responsive documents were to be provided to *both* the prosecution team and the Congressman's counsel. Potentially privileged documents were to be submitted to the Court for determination of the privilege. *See In re Search of the Rayburn House Office Bldg. Rm. No. 2113 Washington, DC 20515,* No. 06-0231 M-01, slip op. at 3-4 (D.D.C. July 10, 2006) (attached hereto as Exhibit B).

Upon consideration of an emergency motion for a stay pending appeal, the Court of Appeals ordered the District Court (or special master) to immediately provide copies of all seized materials to Congressman Jefferson; ordered Congressman Jefferson to provide a list of

---

[7] Unlike here, the search in that case was executed pursuant to a warrant issued by the Court. *See In re: Search of Rayburn,* slip op. at 4.

documents over which he asserts privilege to the District Court so that the court could conduct an *in camera* review in lieu of a filter team review; and prohibited the government from conducting any further review of the documents. *See* Order.

The D.C. Circuit's order is just the most recent example of a court rejecting a filter team proposed by the government in favor of review by a court or special master. *See also* Pet. Mem. 20-21 (citing cases in which filter team requests have been rejected in favor of review by a court or special master).

### C. The Interference with Mr. Al-Shabany's Access to Counsel and the Court is On-Going.

The government's omnibus opposition brief fails to address Petitioners' argument that the seizure and continued retention of Mr. Al-Shabany's legal documents has already interfered, and continues to interfere, with his access to counsel. (Pet. Mem. at 16-17).[8] This Court determined that the habeas petitioners are "entitled to counsel, in order to properly litigate the habeas petitions…and in the interest of justice," *Al Odah v. United States*, 346 F. Supp. 2d 1, 8 (D.D.C. 2004), and this Court entered the Protective Order, which included provisions related to the provision of legal mail to facilitate that representation. It is a settled principle of law that the confiscation of legal papers from a prisoner constitutes interference with access to the courts. *Goff*, 113 F. 3d. at 892; Pet. Mem. at 10; *Simmons v. Dickhaut*, 804 F.2d 182, 182 (1st Cir. 1986) (citing cases).[9]

---

[8] The government's arguments concerning the "great lengths" it has taken to date to comply with the Court ordered Protective Order (Resp. Opp. 9-10) are unconvincing. Moreover, they are irrelevant to the question of whether the confiscation of Mr. Al-Shabany's legal documents was in fact improper and whether those documents should be returned.

[9] It is similarly well established that even individuals held as suspected terrorists have an expectation of privacy that their communications with counsel will not be read or otherwise monitored. *See, e.g., Lonegan v. Hasty*, No. 04 CV 2743 (NG) (VVP), 2006 WL 1707258 (E.D.N.Y. June 22, 2006) (secret monitoring of conversations between terrorism suspects and their counsel violated the Fourth Amendment); *Al Odah*, 346 F. Supp. 2d at 9 (rejecting government proposal to monitor communications between prisoners at Guantanamo and their counsel, and establishing the Protective Order).

This principle is even more salient here where the only means of communication open to Mr. Al-Shabany between counsel visits is legal mail. (*See also* Pet. Mem. at 16). While the government asserts in its Reply and Opposition that legal mail sent after the impoundment continues to be delivered (Resp. Opp. at 5), it does not specify whether Mr. Al-Shabany has any paper upon which to write counsel, or whether Guantanamo authorities will provide him with counsel's address in the interim before new legal mail is delivered.[10] Moreover, continued access to *historical* correspondence from counsel is a critical aspect of Mr. Al-Shabany's right to representation and access to courts. This correspondence (without revealing privileged information) is the only record Mr. Al-Shabany has of the on-going proceedings in his case. The government's continuing interference with Mr. Al-Shabany's access to counsel and the courts can only be remedied by the immediate return of his legal documents.

II.     **If the Court Will Not Order the Immediate Return of the Legal Documents, It Should Grant Petitioners' Request for Alternative Relief.**

Given the paucity of specific facts supporting the government's actions with respect to Mr. Al-Shabany, if the Court should decide not to order the immediate return of the documents, the Court should order particularized discovery into the factual circumstances surrounding the search and seizure of Mr. Al-Shabany's documents. As described above, the affidavits submitted by the government in support of its motion do not identify the prisoners whose documents have been reviewed, scanned or sorted, and do not contain a single allegation tying Mr. Al-Shabany to any of these unnamed prisoners. Therefore, discovery and the opportunity to cross-examine the officials who submitted the affidavits, or some other official with actual knowledge, is necessary.

---

[10] Indeed as detailed in Petitioners' Memorandum, the government states that counsel may not longer be permitted to provide paper to their clients – and does not specify whether the prisoners are permitted to retain any blank paper they already have. (Pet. Mem. at 17; Resp. Mot. at 19).

If upon the conclusion of discovery, the Court determines that review of documents confiscated from Mr. Al-Shabany is warranted, the facts and circumstances here support review by a special master or by the Court – not by a government Filter Team.  As the district court stated in *Stewart*, "it is important that the procedure adopted in this case not only be fair but appear to be fair.  The appearance of fairness helps to protect . . . the willingness of clients to consult with their attorneys." *United State v. Stewart*, No. 02 CR 396 JGK, 2002 WL 1300059, at *8 (S.D.N.Y. June 11, 2002).

The government is simply wrong in its assertion that the qualifications of the proposed Filter Team and the fact that the team will be operating under an order of non-disclosure are sufficient to ensure that the process will appear to be fair. (Resp. Opp. at 21).  A review by lawyers from the same government which is holding Mr. Al-Shabany without charge does not appear fair.  Only review by the Court or a special master will appear to be fair under these circumstances.

A review by a special master or the Court is also the only way to protect against false negatives – i.e., mistaken determinations by the Filter Team that privileged documents are *not* privileged.  The fact that, under the government's proposal, a Filter Team would be required to submit documents it deems *potentially privileged* to the Court, (Resp. Opp. at 24), does not in any way prevent the Filter Team from making mistakes with respect to the documents it deems *not* to be privileged.

Finally, the large volume of confiscated documents does not undercut the rationale for review by the Court or by a special master. (Resp. Opp. 23-24).  Anyone who does the review – a filter team, a judicial officer, or a special master – will have to contend with the volume and the translation issues.  Moreover, despite the volume of the materials, the identification and

elimination from further review of the attorney-client materials may proceed quite quickly, since many of the documents may be printed on law firm letterhead, or otherwise stamped as attorney-client materials. In the end, the volume of the impounded material is the product of the government's undifferentiated sweep of the prison. The government's conduct should not now be rewarded by permitting one of its own to review the confiscated material.

## CONCLUSION

For the reasons stated above and in Petitioners' Memorandum, the Court should grant Petitioners' motion and deny Respondents' motion.

Dated: August 7, 2006
      Washington, D.C.

                                Respectfully submitted,
                                Counsel for Petitioners:


/s/ Paul A. Leder
RICHARDS KIBBE & ORBE LLP
Brian S. Fraser (SDNY No. BF-0114)
Marcellene E. Hearn (SDNY No. MH-6050)
R. Zachary Gelber (SDNY No. RG-9346)
One World Financial Center, 29th Floor
New York, New York  10281
Tel: (212) 530-1800
Fax: (212) 530-1801

Paul A. Leder (DC No. 358597)
1775 Eye Street NW
Washington, D.C.  20006
Tel: (202) 261-2960
Fax: (202) 261-2999

SPEARS & IMES LLP
Christopher Dysard (SDNY No. CD-0002)
51 Madison Avenue
New York, NY 10010
Tel: (212) 213-6833
Fax: (212) 213-0849

*Of Counsel*
Barbara Olshansky (SDNY No. BO-0057)
Gitanjali S. Gutierrez (SDNY No. GG-1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York  10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## CERTIFICATE OF SERVICE

    I hereby certify that, on the 7th day of August, 2006, I caused to be served a copy of the foregoing *Petitioners' Reply Memorandum in Further Support of Motion for Imposition of Sanctions and Immediate Return of Confiscated Attorney-Client Materials* through this Court's CM/ECF system, which will send notification of such filing electronically to registered counsel.


                                       /s/ Paul A. Leder
                                       Paul A. Leder