Previously Filed with CSO and Cleared
for Public Filing

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BENDER AYED HAMOUD HEZAM,** | ) | |
| **AL-OTEIBI AL-SHABANY,** *et al.,* | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2029 (JDB) |
| | ) | |
| **GEORGE W. BUSH,** *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM
## IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS
## AND IN SUPPORT OF PETITIONER'S MOTION
## TO CONTINUE THE STAY AND
## THE GOVERNING PROTECTIVE ORDER IN THIS MATTER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ...................................................................................................................... 4

I.    This Court Retains Subject-Matter Jurisdiction Over a Habeas
      Corpus Petition Where, as Here, the Petitioner's Claims Are Not
      Frivolous and Have Not Been Decided on the Merits by the Supreme
      Court ....................................................................................................................... 4

II.   The Exhaustion Model Contemplated by *Boumediene* Requires That
      the District Court Proceeding Remain in Place for Potential Post-
      Exhaustion Litigation ............................................................................................ 6

III.  Until the Adequacy of the DTA Remedies Is Known, the Court
      Should Implement the Stay-and-Abey Procedure Approved by the
      Supreme Court in the Context of Federal Habeas Corpus Proceedings ............... 7

IV.   The Supreme Court Has Directed This Court to Take All Appropriate
      Steps to Preserve the Status Quo While Jurisdictional Questions Are
      Being Litigated ...................................................................................................... 10

V.    Even Upon Dismissal, the Court Should Enforce the Protective Order
      in Its Entirety ......................................................................................................... 11

      A.   The Court Retains the Power to Enforce the Protective Order ................... 11

      B.   The Court Should Preserve Petitioner's Access to Counsel ....................... 12

      C.   The Court Should Preserve Counsel's Access to the Case File .................. 13

CONCLUSION ................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Adem v. Bush,*
    425 F.Supp.2d 7 (D.D.C. 2006)..................................................................12, 13

*Al-Anazi v. Bush,*
    370 F. Supp. 2d 188 (D.D.C. 2005)............................................................14, 15

*Al-Ghizzawi v. Bush,*
    Civ. No. 05-2378 (D.D.C. Aug. 9, 2006) ..................................................14, 15

*Beardslee v. Brown,*
    393 F.3d 899 (9th Cir. 2004) ............................................................................3

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ..........................................................................12

*Bell v. Hood,*
    327 U.S. 678 (1946) ..........................................................................................5

*Boumediene v. Bush,*
    476 F.3d 981 (D.C. Cir. 2007)..................................................................*passim*

*Boumediene v. Bush,*
    127 S. Ct. 1478 (2007)...............................................................................*passim*

*Carafas v. LaVallee,*
    391 U.S. 234 (1968) ........................................................................................10

*Ex parte Hawk,*
    321 U.S. 114 (1944) ......................................................................................6, 7

*Gambale v. Deutsche Bank AG,*
    377 F.3d 133 (2d Cir. 2004) ..........................................................................11

*Oneida Indian Nation of N.Y. v. County of Oneida,*
    414 U.S. 661 (1974) ..........................................................................................5

*Pace v. DiGuglielmo,*
    544 U.S. 408 (2005) ......................................................................................8, 9

*In re President & Directors of Georgetown College, Inc.,*
    331 F.2d 1000 (D.C. Cir. 1964)..................................................................4, 10

*Poliquin v. Garden Way, Inc.,*
    989 F.2d 527 (1st Cir. 1993) ..........................................................................11

*Rasul v. Bush,*
    542 U.S. 466 (2004) ................................................................6, 9

*Rhines v. Weber,*
    544 U.S. 269 (2005) ................................................................4, 8

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) ................................................................3, 4, 5

*Swain v. Pressley,*
    430 U.S. 372 (1977) ................................................................7

*United States v. Shipp,*
    203 U.S. 563 (1906) ................................................................10

*United States v. United Mine Workers of America,*
    330 U.S. 258 (1947) ................................................................4, 10


## Statutes

Detainee Treatment Act of 2005, Pub. L. No. 109-148, Stat. 2680 ......................................*passim*

Military Commissions Act of 2006, Pub. L. No. 109-366, Stat. 2600 ...........................................2

28 U.S.C. § 2241 ................................................................9

28 U.S.C. § 2254 ................................................................8


## Other

Gordon England, *Implementation of Combatant Status Review Tribunal Procedures for*
    *Enemy Combatants Detained at Guantanamo Bay, Cuba* (July 29, 2004) ........................9

Petitioner Bender Ayed Hamoud Hezam Al-Oteibi Al-Shabany ("Petitioner") submits this memorandum in opposition to Respondents' Motion to Dismiss filed on April 19, 2007 and in support of Petitioner's Motion to Continue the Stay and the Governing Protective Order in this Matter.

Petitioner respectfully requests that this Court deny Respondents' motion and grant Petitioner's motion. In the alternative, in the event that the Court concludes that it must dismiss this action, Petitioner requests that the Court exercise its inherent authority to continue to enforce the governing Protective Order[1] in its entirety.

Pursuant to Local Rule LCvR 7(m) counsel for Petitioner have conferred with counsel for Respondents. Respondents oppose Petitioner's motion.

## PRELIMINARY STATEMENT

On February 20, 2007, a divided panel of the D.C. Circuit Court of Appeals ruled that the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600, deprived courts of jurisdiction over habeas corpus claims brought by foreign nationals imprisoned at Guantanamo. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because the petitioners in those combined cases had not sought review directly with the Court of Appeals under the DTA, the Court found that the "only recourse" was to dismiss the cases for lack of jurisdiction. *Id.* at 994. The *Boumediene* petitioners filed a petition for certiorari in the Supreme Court.

---

[1] On November 17, 2005, this Court entered the protective order and supplemental orders entered in *In re Guantanamo Detainee Cases,* Civ. No. 02-0299 (D.D.C. 2004), including the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued November 8, 2004 ("Amended Protective Order"); the Order Addressing Designation Procedures for "Protected Information," entered on November 10, 2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, issued on December 13, 2004 (hereinafter, collectively, the "Protective Order"). *Al-Shabany v. Bush,* Civ. No. 05-2029 (JDB), Order (Nov. 17, 2005) (dkt. 11).

On April 2, 2007, the Supreme Court denied the petition for certiorari. Three Justices dissented from the denial of the petition, asserting that the jurisdictional and constitutional questions raised by the petitioners "deserve this Court's immediate attention." *Boumediene v. Bush*, 127 S. Ct. 1478, 1479 (2007) (Breyer, J., joined by Souter & Ginsburg, JJ., dissenting). Two other Justices – Justices Stevens and Kennedy – stated that, "[d]espite the obvious importance of the issues raised in these cases," it was "appropriate to deny these petitions *at this time*" in order to require the petitioners to exhaust available remedies. *Id.* (statement of Stevens and Kennedy, JJ., respecting the denial of certiorari) (emphasis added). In other words, five Justices signaled a willingness in the future to review the important jurisdictional issue raised in *Boumediene*.

Respondents argue that the Court of Appeals' holding in *Boumediene* dictates dismissal of Petitioner's habeas corpus action for lack of jurisdiction.[2] However, this Court retains subject-matter jurisdiction over this habeas corpus petition under the very Supreme Court authority upon which Respondents rely. As that authority makes plain, dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is frivolous or foreclosed by prior decisions of the Supreme Court. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). Here, the Court of Appeals' divided decision in *Boumediene* and the commentary of Justices Stevens and Kennedy establish beyond

---

[2] Notably, the Court of Appeals' decision in *Boumediene* is not yet final. Because the Court of Appeals has not issued its mandate, it still has jurisdiction to modify or rescind its opinion. *See Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004). The *Boumediene* petitioners have asked the Court of Appeals to stay the issuance of its mandate pending their exhaustion of remedies in the DTA proceedings and the filing of a renewed petition for certiorari to review the Court's jurisdictional ruling in *Boumediene*. The Court has not yet acted on the motion.

- 3 -

doubt that the issues involved are substantial and that the Supreme Court has not yet decided the important questions that have been deferred pending exhaustion of alternative remedies.

The Supreme Court has provided a clear roadmap to guide this Court. This Court has the authority to stay this action to safeguard Petitioner's habeas corpus rights during the period of exhaustion. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). And while a hearing on the merits is stayed for the time being, this Court has the authority to maintain and enforce the Protective Order governing, among other things, access to counsel and the preservation of documents. *United States v. United Mine Workers of America*, 330 U.S. 258, 290-91 (1947); *In re President & Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964).

In the alternative, if the Court grants Respondents' motion to dismiss, we ask that the Court exercise its inherent authority to continue to enforce the Protective Order in its entirety. Under the authorities cited by Respondents, this Court may continue to enforce the Protective Order even where jurisdiction over the underlying controversy has been lost. Selective dissolution of the Protective Order, as urged by Respondents, would effectively cut off Petitioner's communications with counsel and gravely inhibit his ability to pursue alternative remedies.

## ARGUMENT

I.    This Court Retains Subject-Matter Jurisdiction Over a Habeas Corpus Petition Where, as Here, the Petitioner's Claims Are Not Frivolous and Have Not Been Decided on the Merits by the Supreme Court

Respondents rely on the case of *Steel Company v. Citizens for a Better Environment* for the unremarkable proposition that jurisdiction is a threshold question. (Motion to Dismiss at 4.) However, Respondents ignore the language in *Steel Company* that supports this Court's

- 4 -

jurisdiction to maintain the habeas corpus action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court.

In *Steel Company* the Court held that a district court has subject-matter jurisdiction over a claim under the Constitution or the laws of the United States: "unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). The jurisdictional and constitutional issues in this case are far from frivolous. The courts have been divided on the issues at each level of the litigation: the district courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. As demonstrated by the dissenting opinions in the Court of Appeals and upon the denial of certiorari in *Boumediene*, there is a reasonable construction of the Constitution and laws of the United States that would sustain Petitioner's habeas corpus petition. 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S. Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

The *Steel Company* opinion also establishes that a Court of Appeals opinion, such as *Boumediene*, is not sufficient to deprive this Court of subject-matter jurisdiction. Only when the *Supreme Court* has ruled adversely on the merits is dismissal for want of subject-matter jurisdiction appropriate under *Steel Company*: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of *this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974) (emphasis added)). Petitioner's habeas corpus

- 5 -

claim is certainly not foreclosed by Supreme Court jurisprudence. To the contrary, the Supreme

Court initially found jurisdiction over the Guantanamo petitioners' case in *Rasul v. Bush*, 542

U.S. 466 (2004), and the *Boumediene* denial of certiorari is emphatically not a ruling on the

merits. *See Boumediene*, 127 S. Ct. at 1478 ("[A]s always, denial of certiorari does not

constitute an expression of any opinion on the merits.") (statement of Stevens and Kennedy, JJ.,

respecting the denial of certiorari).

II.     The Exhaustion Model Contemplated by *Boumediene* Requires That the District
        Court Proceeding Remain in Place for Potential Post-Exhaustion Litigation

      Contrary to the suggestion of Respondents (Motion to Dismiss at 6), implicit in the Court

of Appeals' decision in *Boumediene* and explicit in the statement of Justices Kennedy and

Stevens is the principle of exhaustion: threshold jurisdictional questions can only be answered

later, once the *Boumediene* petitioners have exhausted their alternative remedies under the DTA.

The Court of Appeals predicated its dismissal order on the *Boumediene* petitioners' failure to

seek remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy

expressly stated that the Supreme Court was denying certiorari "at this time" in light of the

Court's practice of requiring exhaustion of remedies, citing the case of *Ex parte Hawk*, 321 U.S.

114 (1944). 127 S. Ct. at 1478 (statement of Stevens and Kennedy, JJ., respecting the denial of

certiorari).

      The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas corpus

relief under circumstances in which the effectiveness of state remedies had not been established.

The Supreme Court not only applied the rule of exhaustion but held that the adequacy of the

available remedy should be decided in the first instance by "the federal district court":

- 6 -

> Where the state courts have considered and adjudicated the merits
> of his contentions, and this Court has either reviewed or declined
> to review the state court's decision, a federal court will not
> ordinarily reexamine upon writ of habeas corpus the questions thus
> adjudicated.  But where resort to state court remedies has failed to
> afford a full and fair adjudication of the federal contentions raised,
> either because the state affords no remedy or because in the
> particular case the remedy afforded by state law proves in practice
> unavailable or seriously inadequate, a federal court should
> entertain his petition for habeas corpus, else he would be
> remediless.  In such a case he should proceed in the federal district
> court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  Thus, the exhaustion model anticipates that the ultimate

questions regarding jurisdiction will first be considered and decided by this Court.  The ultimate

issues would then be preserved for appellate and Supreme Court review, if necessary.

III.    Until the Adequacy of the DTA Remedies Is Known, the Court Should Implement
        the Stay-and-Abey Procedure Approved by the Supreme Court in the Context of
        Federal Habeas Corpus Proceedings

It follows from the foregoing analysis that the Court should continue the stay already in

place in this matter.  The question of jurisdiction remains very much a live issue.  Questions

regarding the suspension and elimination of the writ of habeas corpus require consideration of

whether alternative remedies provide protection coextensive with the writ.  *See Swain v.*

*Pressley*, 430 U.S. 372, 381 (1977) ("[T]he substitution of a collateral remedy which is neither

inadequate nor ineffective to test the legality of a person's detention does not constitute a

suspension of the writ of habeas corpus.").  Left unanswered by the Supreme Court's denial of

certiorari in *Boumediene* are numerous predicate questions necessary to decide the jurisdictional

issue, including: Is the limited review permitted under the DTA a constitutionally adequate

substitute for habeas corpus?  If not, has the writ been unconstitutionally suspended or

eliminated?  At this time, the Court has insufficient information to answer these questions, but

answers will come with the exhaustion of the detainees' remedies under the DTA. Continuing the stay of this action will ensure that this Court, at the appropriate time, can reach these important jurisdictional and constitutional questions promptly. Even if the Court ultimately rules adversely to Petitioner, it is critical to have an adequate record for appellate review.

Continuing the stay of this case is entirely consistent with Supreme Court directives concerning the proper course of action by a federal court when presented with unexhausted habeas corpus petitions brought pursuant to 28 U.S.C. § 2254. In *Rhines v. Weber*, 544 U.S. 269 (2005), the petitioner presented the district court with a mixed petition containing some claims that had been exhausted in state court and some that had not. *Id.* at 272-73. Given the grave procedural risks associated with a dismissal order, the Court ruled that the district court had the discretion to stay and abey the federal habeas corpus claim while the petitioner's unexhausted claims were presented in state court. *Id.* at 277-78. Indeed, the Court indicated that it would likely be an abuse of discretion to dismiss a petition if the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278[3]; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The petition here easily meets all three conditions for what is in effect a mandatory stay-and-abey.

*First*, Petitioner has done nothing to delay the adjudication of this case. To the contrary, the stay that has kept his case inactive resulted from Respondents' motion in November 2005. Unlike the death penalty cases that caused the Supreme Court concern in *Rhines*, every day of

---

[3] In *Rhines*, three concurring Justices stated that a stay-and-abey order should be *required* in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Ginsburg and Breyer, JJ.).

- 8 -

delay for Petitioner – who has never been charged with anything, yet is locked in solitary confinement in a facility modeled on an American maximum-security prison – is absolutely devastating.

*Second*, there is good cause for Petitioner's failure to exhaust the potential remedies provided by the DTA. The Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), which established a right to proceed under § 2241, and the subsequent enactment by Congress of the DTA and the MCA, have created an enormously complicated legal landscape.[4] In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections, 544 U.S. at 416, but those complexities pale in comparison to the legal uncertainties facing the Guantanamo prisoners.

*Third*, Petitioner's unexhausted DTA claims (as well as those raised in this court) are meritorious. Among Petitioner's unexhausted claims are that he was improperly designated as an enemy combatant in the CSRT proceeding and that the CSRT standards and procedures, presumably followed by the government with respect to Petitioner, violate the laws and Constitution of the United States. *See* DTA §§ 1005(e)(2)(C)(i), (ii).

---

[4] Further confusing matters, at the time Petitioner's Combatant Status Review Tribunal ("CSRT") occurred, not only had the DTA not been enacted, but on information and belief, Petitioner was read a statement at the CSRT in which the government informed him that the CSRTs were separate and apart from habeas relief. The text of the notice was:

> As a matter separate from these Tribunals, United States courts have jurisdiction to consider petitions brought by enemy combatants held at this facility that challenge the legality of their detention. You will be notified in the near future what procedures are available to challenge your detention in U.S. courts. Whether or not you decide to do so, the Combatant Status Review Tribunal will still review your status as an enemy combatant.

*See* Gordon England, Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba (July 29, 2004), Enclosure (4).

Petitioner's habeas corpus petition was filed in October 2005 but has yet to progress substantively. Given the very real possibility that the Supreme Court will find the Court of Appeals' jurisdictional holding in *Boumediene* to be in error, ordering dismissal of this case now threatens to cause unnecessary additional delay that is contrary to the very nature of habeas corpus relief. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (the writ of habeas corpus, "shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"). The Court should be in position to proceed immediately, in the event the case is remanded.

IV.   The Supreme Court Has Directed This Court to Take All Appropriate Steps to Preserve the Status Quo While Jurisdictional Questions Are Being Litigated

In denying the petition for certiorari in *Boumediene*, Justices Stevens and Kennedy cautioned: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S. Ct. at 1478 (statement of Stevens and Kennedy, JJ., respecting the denial of certiorari). This admonition is based on the long-established principle that the ultimate question of jurisdiction is one for the Supreme Court, and in the meantime other federal courts have the "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." *United States v. United Mine Workers of America*, 330 U.S. 258, 291 (1947) (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)); *accord In re President & Directors of Georgetown College, Inc.*, 331 F.2d 1000, 1005 (D.C. Cir. 1964).

- 10 -

It is especially critical that the Court take the appropriate steps to preserve the status quo in this case. In their motion to dismiss, Respondents seek to dissolve selected provisions of the longstanding Protective Order in the habeas corpus cases, an order that is the product of extensive negotiations between counsel for the government and counsel for the Guantanamo prisoners. (Motion to Dismiss at 9-10.) Without the Protective Order, there would be no legal mail channel, no privileged communications between attorney and client, and no procedures governing in-person visits to the base. Upon dissolution of the order, the Court Security Officer as well as counsel would likely be forced to destroy documents regarding Petitioner's detention that may be essential to his DTA action. (Amended Protective Order ¶¶ 11, 45.) The Court can prevent this irreparable harm to Petitioner and protect the status quo by entering an order which makes it clear that the stay and the governing Protective Order continue to be in effect.

V.    Even Upon Dismissal, the Court Should Enforce the Protective Order in Its Entirety

If the Court dismisses the underlying habeas action, Petitioner requests that the Court continue to enforce the Protective Order in its entirety to preserve Petitioner's access to counsel and the courts and his ability to file a DTA appeal.

A.    The Court Retains the Power to Enforce the Protective Order

It is well-settled that a district court retains the inherent authority to enforce its own protective orders even where it no longer has jurisdiction over the case in which the order was entered. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) ("[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order even after judgment."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141-42 (2d Cir. 2004) (district court retains supervisory power over its own records and

- 11 -

files – including documents subject to protective order – even after parties filed a stipulation of

dismissal); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (independent

jurisdictional basis for intervention not required because court has inherent power to modify

protective order).  Indeed, Respondents acknowledge that the Court has such authority.  (Motion

to Dismiss at 8.)

This long-standing principle was applied just last year in this District by Magistrate Judge

Kay in *Adem v. Bush*, another case involving a Guantanamo detainee.  Adem's counsel sought to

enforce the provisions of the Protective Order governing counsel visits.  Respondents urged the

Court to delay consideration of Adem's motion pending the outcome of the jurisdictional issues

raised by the then newly-enacted the DTA.  Magistrate Judge Kay held that "the issues raised by

Adem's motion seeking access to counsel pursuant to the Amended Protective Order do not

implicate any of the jurisdictional claims currently pending in the D.C. Circuit and the Supreme

Court" and cited the cases in the preceding paragraph with approval.  *Adem v. Bush*, 425 F.

Supp.2d 7, 20 (D.D.C. 2006).  In other words, without regard to the merits of the jurisdictional

arguments made by the government, the Court retained the authority to enforce the Protective

Order.[5]

### B.     The Court Should Preserve Petitioner's Access to Counsel

Unless this Court makes clear that the Protective Order survives dismissal, Respondents

will cut off communications between Petitioner and counsel.  Indeed, Respondents have begun to

---

[5] Respondents' allegation that Petitioner seeks enforcement of the Protective Order in order to continue to litigate the habeas claim (Motion to Dismiss at 8 n. 15) should be ignored, because Petitioner is also seeking the continued enforcement of the stay, which precludes litigation on the merits.  All Petitioner seeks through the continued enforcement of the Protective Order to maintain access to counsel and to ensure that counsel has access to the full case record.

inform counsel in dismissed cases that Respondents will not permit any access to their clients until a DTA petition is filed and counsel consents to the entry of a highly restrictive protective order which has been proposed by Respondents in several pending DTA appeals.[6] Among other things, Respondents' proposed order strictly limits the number of visits lawyers can have with their clients, permits invasive review and censorship by the Government of legal mail, and permits the Government to limit access to classified materials in the CSRT record unless the Government determines counsel has "a need to know" the full contents.

Without the benefit of the existing Protective Order, the only means by which counsel could communicate with our client would be through the regular prison mail system, where mail is read and censored by the military and takes months to be delivered. *See, e.g., Adem*, 425 F. Supp.2d at 18 n.22 (*pro se* petitions mailed to the district court from Guantanamo using regular mail system took from two to six months to arrive).

We submit that the proposed cut-off of counsel's access to our client constitutes "additional steps to prejudice the position of petitioners in seeking review in [the Supreme] Court," and "other and ongoing injury" such that this Court's intervention is required to "ensure that the office and purposes of the writ of habeas corpus are not compromised," as contemplated by Justices Stevens and Kennedy in *Boumediene*. 127 S. Ct. at 1478 (statement of Stevens and Kennedy, JJ., respecting the denial of certiorari).

C.     The Court Should Preserve Counsel's Access to the Case File

The Protective Order must be enforced to preserve counsel's access to documents which are critical to counsel's representation of Petitioner and which are held at the "secure area" under

---

[6] *See* [Government's Proposed] Protective Order and Procedures for Counsel Access to Detainee at the United States Naval Base in Guantanamo Bay, Cuba, *Bismullah v. Rumsfeld*, No. 06-0117.

- 13 -

the terms of the Protective Order. There are two broad categories of documents to which Petitioner seeks to preserve access (without describing any specific information or waiving privilege with respect to such information).

First, Petitioner seeks to preserve counsel's access to the full CSRT record concerning Petitioner. On or about March 17, 2006, pursuant to this Court's November 17, 2005 Order to provide counsel with the factual return,[7] Respondents deposited at the "secure area" the "remaining portions of the record, including information that is classified as not suitable for public release." *See Al-Shabany,* Notice of Submission of Factual Return Under Seal, at 2 (Mar. 17, 2006) (dkt. no. 21). This Court has previously recognized that regardless of whether the D.C. Circuit has exclusive jurisdiction, access to the complete factual return is "necessary for counsel effectively to represent petitioner." *See Al-Ghizzawi,* Order at 3 (quoting *Al-Anazi v. Bush,* 370 F.Supp. 2d 188, 700 (D.D.C. 2005)).

Second, the Petitioner seeks to preserve counsel's access to the portions of their own case files that they were required to send to the "secure area" under the Protective Order – including notes taken during meetings with Petitioner and correspondence from Petitioner which have not been submitted for clearance or which have not been cleared by the privilege team – as well as any work product derived from classified materials. (Revised Procedures for Counsel Access to Detainees, § IV-VII) (setting out procedures governing notes from counsel visits, letters from detainees, and information learned from detainees); (Amended Protective Order ¶ 26) (governing work product). It is axiomatic that counsel needs access to their case files in order to adequately represent Petitioner.

---

[7] Respondents have described the factual return "as the records of petitioner's proceedings before the CSRT." *See Al-Ghizzawi v. Bush,* Civ. No. 05-2378, Order at 3 (D.D.C. Aug. 9, 2006).

- 14 -

However, unless the Protective Order is deemed to be in effect, Respondents may take the position that counsel is no longer permitted access to these materials and that these materials should be destroyed. (Amended Protective Order ¶ 34) ("All document containing classified information prepared, possessed, or maintained by, or provided to, petitioner's counsel … shall remain at all times in the control of the Court Security Officer for the duration of these cases. Upon final resolution of these cases, including all appeals, all such documents shall be destroyed by the Court Security Officer.").

This Court has taken measures in the past to protect the ability of counsel for the Guantanamo prisoners to represent their clients effectively, *see, e.g., Al-Shabany,* Mem. Op. at 5 (Nov. 17, 2005) (dkt. 12) (ordering government to produce a factual return because it "appears to be necessary in order to enable counsel effectively to represent the petitioner"); *Al-Ghizzawi,* Order at 3 (ruling on motion for production of factual return despite stay because "[t]o do otherwise could unnecessarily prejudice petitioner's ability to timely and meaningfully communicate with counsel and advance his claims, given the logistical difficulties and limitations associated with attorney-client communications in this unique detention setting"); *accord Al-Anazi,* 370 F. Supp. 2d at 200. We ask the Court to do so again. It is the only way to avoid substantial injustice to Petitioner.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court deny Respondents' Motion to Dismiss and grant Petitioner's Motion to Continue the Stay and Governing Protective Order in this matter; or in the alternative, if the case is dismissed, enter an order extending the enforcement of the Protective Order in its entirety.

- 15 -

Dated: May 2, 2007

Respectfully submitted,

Counsel for Petitioner:

/s/ Paul A. Leder

RICHARDS KIBBE & ORBE LLP
Paul A. Leder (D.C. No. 358597)
Portrait Building
701 8th Street NW
Washington, D.C. 20001
Tel: (202) 261-2960
Fax: (202) 261-2999

Marcellene E. Hearn
R. Zachary Gelber
One World Financial Center
New York, New York 10281
Tel: (212) 530-1800
Fax: (212) 530-1801

SPEARS & IMES LLP
Christopher W. Dysard
51 Madison Avenue
New York, New York 10010
Tel: (212) 213-6833
Fax: (212) 213-0849

Of Counsel:
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499